2013 UT App 1

# THE UTAH COURT OF APPEALS

NORTH FORK SPECIAL SERVICE DISTRICT,

*Plaintiff and Appellee,*

*v.*

ROBERT BENNION,

*Defendant and Appellant.*

Opinion
No. 20111026-CA
Filed January 4, 2013

Fourth District, Provo Department
The Honorable Steven L. Hansen
No. 080400633

Jeffrey T. Colemere and Brady T. Gibbs, Attorneys for Appellant
Kasey L. Wright and Melissa K. Mellor, Attorneys for Appellee

JUDGE CAROLYN B. MCHUGH authored this Opinion, in which
JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

McHUGH, Judge:

¶1 Robert Bennion appeals from the trial court's entry of summary judgment in favor of the North Fork Special Service District (the District) for past due service fees and interest charges that exceed $200. Bennion also challenges the trial court's award of attorney fees under Utah Code section 78B-5-825. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012). We vacate the judgment and remand for the entry of a new judgment consistent with this opinion.

BACKGROUND

¶2    At all times relevant to this action, Bennion owned residential property located within the District's service boundaries, the District provided him with water, fire protection, and garbage collection services, and it routinely sent Bennion quarterly invoice statements. Sometime in early 1998, the lateral water line (the Bennion Line) between Bennion's property and the District's main water line (the Main Line) began to develop serious leaks, and the District informed Bennion that it was his duty to repair it. In response, Bennion stopped using the property, closed the valve where the water enters the Bennion Line, and notified the District that he no longer wished to receive water. Despite that request, the District continued to send water to the Bennion Line in order to provide water to other customers who had connected to the Bennion Line.[1] Bennion has refused to pay the District for any service fees after 1998.

The 1998 Case

¶3    Shortly after Bennion closed the valve to the Main Line, a neighbor who received water from the District through the Bennion Line filed suit seeking an injunction barring Bennion from shutting off the water (the 1998 Case). Bennion counterclaimed, seeking an injunction against the neighbor's use of the Bennion Line. In addition, Bennion joined the District as a third-party defendant and sought an injunction preventing it from using the Bennion Line to deliver water to its other customers. The trial court issued a temporary restraining order preventing Bennion from shutting off the water. It also struck Bennion's pleadings and dismissed his

---

1. Although a customer's lateral line is typically used exclusively to deliver water to that customer's property, the District and Bennion's predecessor-in-interest had agreed to allow other customers to receive water through the Bennion Line.

claims for injunctive relief with prejudice as a discovery sanction. Bennion did not appeal that decision.

The 2002 Case

¶4     On March 29, 2002, the District sued Bennion for overdue charges, including excess water fees for the leaked water, which were calculated according to a graduated scale for usage above 5,000 gallons per month (the 2002 Case). Bennion filed a counter-claim for damages, which the 2002 court dismissed in 2004 for failure to file a notice of claim as required by the Governmental Immunity Act and, because the claims could have been brought in the 1998 Case, they were barred by res judicata. Subsequently, on November 10, 2005, the 2002 court granted partial summary judgment and awarded the District base user fees and accrued interest for the period of January 1, 1997, through January 25, 2002. After a bench trial on October 10, 2008, the 2002 court ruled that Bennion was responsible for maintenance of the Bennion Line and for the excess water fees, "regardless of whether [Bennion] actually uses such water or whether the water is lost through leaks located in the [Bennion Line]." The 2002 court reasoned that Bennion was "the owner of the [Bennion Line]" and "that [Bennion] prohibited [the District] from placing a meter on the [Bennion Line] that would have more accurately determined how much water was actually used by [Bennion]." The court ordered Bennion to pay for the excess water fees accrued between November 1, 1997, and May 1, 1998, plus interest and attorney fees. Bennion appealed the 2002 court's decision, which we dismissed due to Bennion's failure to file a timely notice of appeal. *See North Fork Special Serv. Dist. v. Bennion*, 2006 UT App 447U (mem.).

The 2006 Case

¶5     On May 25, 2006, the District brought a condemnation action against Bennion to establish an easement across Bennion's property for the purpose of constructing a waterline to service the District's other customers (the 2006 Case). On September 22, 2006, the 2006

court determined that the Bennion Line was "leaking and losing hundreds of gallons of water each week." Therefore, it granted the District immediate occupancy of a portion of Bennion's property to construct a new waterline or repair the existing one. Bennion petitioned for interlocutory appeal, which we denied.

The Current Case

¶6    On February 29, 2008, the District filed another complaint against Bennion to collect base user fees, excess user fees, and interest associated with water taken from the Bennion Line since March 31, 2002, and seeking $250,000 in punitive damages (the Current Case). Bennion answered the complaint and filed a Motion to Dismiss, arguing that the District was not entitled to punitive damages and that the District's claims were barred by the applicable statute of limitations. After a hearing on August 25, 2008, the trial court dismissed the District's claim for punitive damages and ruled that a four-year statute of limitations applied, effectively prohibiting the District from recovering any fees or interest incurred prior to February 28, 2004. It also ordered the parties to provide supplemental briefing as to the applicability of Utah Code section 17B-1-904, which limits the amount a local district can collect for past due fees.

¶7    In response, Bennion filed a supplemental memorandum claiming that because his property is residential, Utah Code section 17B-1-904 limits the total amount the District could recover to $200. Bennion argued that by adopting Utah Code section 17D-1-106, which became effective on May 8, 2008, the Utah Legislature intended for the $200 recovery limit on local districts to apply retroactively to special service districts. The District argued that there was no retroactive effect. After briefing was complete, and without seeking permission, Bennion filed a supplemental reply memorandum outlining the legislative history of the relevant code sections and arguing, for the first time, that Utah Code section 17B-2-804, the predecessor statute to section 17B-1-904, limited the District's recovery to no more than $200 for the period from its

effective date of May 3, 2004, to when it was repealed and replaced by section 17B-1-904 on April 30, 2007.

¶8     On September 25, 2008, the trial court ruled that the District's recovery was not limited to $200 because "[a]lthough, as noted by [Bennion], section 17B-1-904 was enacted in 2004,[2] it did not apply to special service districts until May 5, 2008 when section 17D-1-106 was enacted, which was approximately two months after the case was filed by [the District]." The court further explained,

> In the absence of language in the statute showing an intent on the part of the legislature that section 17D-1-106 should be applied retroactively to make section 17B-1-904 and other sections applicable to special service districts, the court declines to apply it retroactively to cap [the District's] service fee damages to $200.

In denying Bennion's Motion to Dismiss, the court did not address whether section 17B-2-804 limited the District's fees to $200 during the period of May 3, 2004, to April 30, 2007, when that statute was in effect. It also did not consider whether section 17B-1-904 limited the amount of interest that could accrue after its effective date.

¶9     On May 19, 2010, the District filed a Motion for Summary Judgment and supporting memorandum claiming that Bennion was liable for base user fees and excess water fees for the period from February 28, 2004, through March 31, 2009. The District also sought interest on those fees for the period between April 30, 2004,

---

2. We note that the trial court incorrectly referenced section 17B-1-904 as being enacted in 2004. We provide a more detailed analysis of the evolving statutory scheme later in this opinion. *See infra* ¶¶ 27–49.

through May 14, 2010. Finally, the District alleged that it was entitled to attorney fees pursuant to Utah Code section 78B-5-825. In support of its fees claim, the District argued that it was "forced to pursue litigation for over eight years in an attempt to" obtain delinquent fees and that, in light of the prior judgments against him, Bennion's defense of the Current Case constituted bad faith.

¶10    Bennion responded to the District's Motion for Summary Judgment with a memorandum in opposition (the Opposition Memorandum), which disputed that he had acted in bad faith. Additionally, Bennion argued that summary judgment was improper as a matter of law because both sections 17B-2-804 and 17B-1-904 applied to the Current Case, during different time periods. The District filed a motion to strike portions of the Opposition Memorandum, including Bennion's arguments regarding sections 17B-2-804 and 17B-1-904. It asserted that these arguments should be stricken because they had "already been briefed by the parties, and this Court signed a decision on October 1, 2008, rejecting [Bennion's] arguments related to Utah Code [section] 17B-1-904."

¶11    After a hearing on June 8, 2011, the trial court granted summary judgment and struck Bennion's statutory arguments as redundant. Although the motion was one for summary judgment, on October 13, 2011, the trial court issued "Findings of Fact and Conclusions of Law on Plaintiff's Motion for Summary Judgment." In the "Findings of Fact" section, the trial court stated that Bennion was the owner of the Bennion Line and that he was responsible for its maintenance. The court also stated as a finding of fact that Bennion owed base user fees in the amount of $3,711; excess water fees in the amount of $95,330 for the period between February 28, 2004, through March 31, 2009; and interest at the rate of 12% per annum for the period of April 30, 2004, through June 8, 2011, in the amount of $61,155. In addition, the trial court concluded that the District was entitled to continuing interest of 12% per annum until the judgment is paid in full. The court further found that "Bennion's actions and continued litigation have been pursued in

bad faith" and ordered him to pay the District's attorney fees in the amount of $11,362. Bennion filed a timely appeal.

ISSUES AND STANDARDS OF REVIEW

¶12    First, Bennion argues that the trial court erred in granting the District's summary judgment motion because it failed to apply Utah Code sections 17B-2-804 and 17B-1-904 to limit the amount of user fees, excess water fees, and interest that the District could recover against him. *See* Utah Code Ann. § 17B-2-804 (LexisNexis 2004);[3] *id.* § 17B-1-904 (2009). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We review the trial court's summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *Baxter v. Saunders Outdoor Adver., Inc.*, 2007 UT App 340, ¶ 6, 171 P.3d 469 (citation and internal quotation marks omitted). Additionally, "[i]ssues of statutory interpretation are questions of law that we review for correctness." *In re R.B.F.S.*, 2012 UT App 132, ¶ 10, 278 P.3d 143 (citation and internal quotation marks omitted).

¶13    Second, Bennion contends that the trial court erred by determining as a matter of law that he was responsible to maintain the Bennion Line and to pay any excess water fees resulting from unrepaired leaks in it. As stated above, we review summary judgment for correctness. *See Baxter*, 2007 UT App 340, ¶ 6. "Our review is limited to determining whether the district court correctly applied the summary judgment standard in light of the undisputed material facts." *Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 10, 221 P.3d 219.

---

3. Utah Code section 17B-2-804 was repealed and replaced with Utah Code section 17B-1-904, effective April 30, 2007. *See* Act of Apr. 30, 2007, ch. 329, § 468, 2007 Utah Laws 1723, 2007–14.

¶14    Third, Bennion argues that the trial court erred when it awarded the District attorney fees because even if Bennion's defenses were advanced in bad faith, they were not without merit. A prevailing party is entitled to an award of attorney fees pursuant to section 78B-5-825 if the action was both "without merit" and "not brought or asserted in good faith." *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012). "The trial court's determination that an action lacks merit . . . is a question of law, which we review for correctness." *Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 13, 214 P.3d 120.

ANALYSIS

I. Statutory Interpretation

¶15    Bennion argues that the trial court erroneously granted summary judgment when it failed to interpret and apply sections 17B-2-804 and 17B-1-904 to limit the District's recovery to $200 for water it provided to Bennion's residential property.[4] *See* Utah Code Ann. § 17B-2-804; *id*. § 17B-1-904. He therefore asks that we reverse and remand to the trial court for readjustment of past due service fees and interest.

¶16    The District first argues that we should not consider Bennion's section 17B-2-804 claim because he did not "specifically appeal the order striking" that argument from his Opposition Memorandum. The District also contends that this claim was not

---

4. Bennion argued before the trial court that both sections 17B-2-804 and 17B-1-904 limit the District's recovery to a total of $200 during the applicable time periods. On appeal, Bennion argues that these sections limit the District's recovery to $200 per month. During oral argument, Bennion clarified that although the statutes do not state the $200 as a monthly limitation, the $200 is limited per form notice, which can be sent every thirty days.

properly preserved in the trial court because his supplemental reply memorandum was untimely and was not adequately briefed in any other pleading. In the alternative, the District argues that even if the claim has been preserved, the trial court correctly determined that the District's recovery is not limited to $200. In particular, the District argues that section 17B-2-804 is ambiguous, the other provisions in the statute are inconsistent with a $200 limitation, and the imposition of such a limit is contrary to the general purposes of Title 17B, Chapter 2, Part 8. Although the District disputes the preservation and applicability of section 17B-2-804, it offers no response to Bennion's arguments on appeal regarding section 17B-1-904.

A. Jurisdiction and Preservation

¶17    Before reaching the merits of Bennion's claims on appeal, we address the District's argument that Bennion was required to "specifically appeal the order striking the [portions of his] pleading" related to the $200 fee limitation of section 17B-2-804. *See id.* § 17B-2-804(3)(b)(i)(B). It is unclear from the District's appellate brief whether it challenges the sufficiency of the notice of appeal to confer jurisdiction on this court to consider the decision striking Bennion's argument, or the adequacy of Bennion's appellate briefs in challenging that decision. Because the District indicated during oral argument that it intended to raise both arguments, we consider each in turn, beginning with the scope of the notice of appeal.

¶18    On October 13, 2011, the trial court issued an order striking portions of Bennion's Opposition Memorandum and issued a separate order granting summary judgment in favor of the District. Rule 3(d) of the Utah Rules of Appellate Procedure provides, "The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment or order, or part thereof, appealed from; shall designate the court from which the appeal is taken; and shall designate the court to which the appeal is taken." Utah R. App. P. 3(d). Utah precedent interpreting rule 3(d) clarifies that Bennion was not required to identify the interim order striking his

section 17B-2-804 argument in the notice of appeal. "[W]e have long adhered to the policy that where the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed." *Goggin v. Goggin*, 2011 UT 76, ¶ 24, 267 P.3d 885 (citation and internal quotation marks omitted). Accordingly, Bennion need not "indicate that the appeal also concerns intermediate orders or events that have led to that final judgment." *See Zions First Nat'l Bank, N.A. v. Rocky Mountain Irrigation, Inc.*, 931 P.2d 142, 144 (Utah 1997); *see also Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 50 (Utah 1994) ("When appealing from an entire final judgment as [Bennion] did here, it is not necessary to specify each interlocutory order of which [Bennion] seeks review."). Instead, "the relevant inquiry is whether the prior orders not named in [Bennion's] notice of appeal were 'intermediate orders' that led to a final, appealable order." *See Speros v. Fricke*, 2004 UT 69, ¶ 16, 98 P.3d 28. Where the "intermediate order of the court . . . constitutes one link in the chain of rulings leading to dismissal," Bennion is entitled to challenge it based on a notice of appeal identifying the final order. *See Braun v. Nevada Chems., Inc.*, 2010 UT App 188, ¶ 10, 236 P.3d 176.

¶19    The trial court's order striking portions of Bennion's Opposition Memorandum constitutes an intermediate "link in the chain of rulings" that led to summary judgment in favor of the District. *See id.*; *Speros*, 2004 UT 69, ¶ 18 (determining that a notice of appeal encompasses all orders that amount to "intermediate steps along the way to the final judgment"). Indeed, the order striking portions of Bennion's brief and the order granting summary judgment in favor of the District were issued the same day. *See In re B.B.*, 2002 UT App 82, ¶ 10, 45 P.3d 527 (concluding that notice of appeal that only mentioned one of the two orders, although "not ideal," served to notify the opposing parties that both of the trial court's orders from the same hearing were being appealed, "particularly where the orders bear the same date"). The summary judgment order does not address Bennion's statutory

arguments because it relies upon the contemporaneous order striking them from his Opposition Memorandum.

¶20   Additionally, the District has advanced no argument suggesting that it has been prejudiced. *See Goggin*, 2011 UT 76, ¶ 24; *Speros*, 2004 UT 69, ¶ 16 n.2. Bennion's notice of appeal sufficiently notified the District that he was challenging the trial court's judgment awarding the District damages in an amount that exceeds the limit provided by the identical language of sections 17B-2-804 and 17B-1-904. "Because [Bennion] complied with rule 3(d) and generally designated the final judgment in [his] notice of appeal, [he is] not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved." *See Zions First Nat'l Bank*, 931 P.2d at 144.

¶21   The District also asserts that Bennion's section 17B-2-804 argument was not properly preserved. While the District acknowledges that Bennion raised the issue of the $200 limitation in the context of section 17B-1-904 during the hearing on the Motion to Dismiss and in a supplemental brief, it asserts that he did not raise his argument in the context of section 17B-2-804. The District asks us to ignore Bennion's second supplemental memorandum, which it acknowledges raised section 17B-2-804, because it was not authorized or accepted by the trial court. Indeed, the trial court makes no reference to this pleading in its decision denying Bennion's Motion to Dismiss, which analyzes only the applicability of the $200 limitation under section 17B-1-904. However, even ignoring that uninvited memorandum, we conclude that Bennion adequately raised the $200 limitation in the context of section 17B-2-804 in the trial court.

¶22   Later in the trial court proceedings, the District moved for summary judgment. In opposition to that motion, Bennion expressly argued that both sections 17B-2-804 and 17B-1-904 limited the District's recovery to $200. "To preserve an issue for appeal, an appellant must present it to the trial court 'in such a way

that the trial court has an opportunity to rule on that issue.'" *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 26, 280 P.3d 425 (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801). Preservation requires that the trial court be given "'notice of the asserted error and allows for correction at that time in the course of the proceeding.'" *Id.* (quoting *438 Main St.*, 2004 UT 72, ¶ 51). Thus, "an issue is preserved only if (1) it is 'raised in a timely fashion,' (2) it is 'specifically raised,' and (3) 'supporting evidence or relevant legal authority' is introduced." *Id.* (quoting *438 Main St.*, 2004 UT 72, ¶ 51). By including his section 17B-2-804 argument in his Opposition Memorandum to summary judgment, Bennion timely and specifically raised it in the trial court.

¶23    However, the District argues that Bennion failed to cite relevant legal authority. While the District is correct that Bennion cites no relevant case law, it is also true that there are no Utah appellate decisions interpreting section 17B-2-804. Under these circumstances, Bennion adequately introduced the relevant legal authority by citing the language of the statute. Thus, Bennion's claim that section 17B-2-804 limited the District's recovery to $200 was timely placed before the trial court, specifically raised in a way that the trial court had an opportunity to rule on it, and supported by the only relevant legal authority available. *See Ciokewicz*, 2012 UT App 162, ¶ 26. We are also convinced that where Bennion raised his section 17B-2-804 claim after the trial court rejected section 17B-1-904 as inapplicable to the relevant time period, the relevance of the issue was apparent and our consideration of it is fair. *See Patterson v. Patterson*, 2011 UT 68, ¶ 16, 266 P.3d 828 ("Notions of fairness therefore dictate that a party should be given an opportunity to address the alleged error in the trial court.").

¶24    The District next contends that Bennion has not adequately preserved his section 17B-2-804 argument because he has not argued on appeal that the trial court erred in striking the portion of his Opposition Memorandum addressing that statute. In support, the District relies on our decision in *Maese v. Tooele County*, 2012 UT App 49, 273 P.3d 388. In *Maese*, we refused to consider the content

of an affidavit stricken by the trial court on foundational grounds in determining whether the trial court had correctly granted summary judgment. *Id.* ¶ 8. Although the appellant relied on the stricken affidavit in his challenge of the trial court's decision granting summary judgment in favor of the appellee, he did not argue on appeal that the trial court erred in striking the affidavit. *Id.* Because the appellant had not advanced any argument on appeal as to why the content of the affidavit should be considered, we declined to consider it. *Id.*

¶25 Unlike the appellant in *Maese*, Bennion challenges the trial court's summary judgment ruling by asserting on appeal that sections 17B-2-804 and 17B-1-904 precluded summary judgment in the amount awarded as a matter of law. By striking portions of his brief, the trial court refused to consider Bennion's legal argument, not evidence of controverted factual questions.[5] That distinction is important because "[o]ur preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction." *Patterson*, 2011 UT 68, ¶ 13. "[I]n assessing the application of our preservation rule," we consider its effect on the underlying policies of "judicial economy and fairness." *See id*. ¶ 15. In furthering judicial economy, "the preservation rule should be more strictly applied when the asserted new issue or theory 'depends on controverted factual questions whose relevance thereto was not made to appear at trial.'" *Id*. (quoting *James v. Preston*, 746 P.2d 799, 801 (Utah Ct. App. 1987)). With regard to fairness, because "the responsibility for detecting error is on the party asserting it, not on

---

5. Bennion also acknowledged during oral argument that this case differs from *Maese* because, if the trial court was correct in its interpretation of section 17B-1-904, it was also correct that Bennion's reliance on section 17B-2-804 was redundant where the language of the statutes is identical. However, the trial court never interpreted the statutory language of section 17B-1-904; it concluded that the section did not apply to special service districts during the relevant period.

the court," we believe that "[i]t generally would be unfair to reverse a district court for a reason presented first on appeal." *Id.* ¶ 16.

¶26     As discussed, the resolution of whether section 17B-2-804 limits the District's recovery to $200 is a question of law that does not involve controverted factual questions. We also conclude that it is fair to consider the statutory arguments because they are not raised for the first time on appeal. Bennion asserted that the District's recovery is limited to $200 during the proceedings in the trial court and advanced the identical language of sections 17B-1-904 and 17B-2-804 in support of that argument. Under these circumstances, we exercise our discretion to consider the applicability of the statutory limitations on appeal.

B. The Evolving Statutory Scheme

¶27     We now consider Bennion's claim that the trial court awarded judgment in amounts that exceed the applicable statutory limits on the District's recovery. Our task is complicated by the fact that the statutory scheme governing the recovery of fees by special service districts has evolved. "As a general rule, when adjudicating a dispute we apply the version of the statute that was in effect 'at the time of the events giving rise to [the] suit.'" *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (alteration in original) (quoting *Taghipour v. Jerez*, 2002 UT 74, ¶ 5 n.1, 52 P.3d 1252). The Utah Legislature has included a restriction on retroactive application of the Utah Code, stating, "A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." *See* Utah Code Ann. § 68-3-3 (LexisNexis 2011). The Utah Supreme Court has cautioned that "exceptions to this general rule are rare." *See Harvey*, 2010 UT 12, ¶ 13. Here, the events giving rise to the District's suit were Bennion's repeated failures to pay for the water provided by the District. Thus, we use the dates that the water fees were incurred to determine the statutory scheme applicable to the District's recovery.

¶28    The trial court granted the District summary judgment for base water fees and excess water fees incurred by Bennion from February 28, 2004, through March 31, 2009, prejudgment interest from April 30, 2004, to May 14, 2010, and postjudgment interest at the rate of 12% per annum until paid. Thus, the award spans the period from February 28, 2004, through the present. Due to changes in the restrictions on recovery, there are four distinct time periods covered by the award that are relevant to the calculation of the District's recovery.

¶29    From February 28, 2004, until the effective date of section 17B-2-804 on May 3, 2004, there were no restrictions on the District's recovery of water fees, attorney fees, costs, or interest from its residential customers. Consequently, Bennion does not challenge the District's right to recover its actual fees and expenses for that period. As a result, the trial court's award of fees incurred from February 28, 2004, through May 2, 2004, and the costs and expenses incurred by the District in collecting those fees, are not in dispute.

¶30    On May 3, 2004, section 17B-2-804—as well as section 17A-1-205, which made the provisions of section 17B-2-804 for local districts equally applicable to special service districts—became effective. *See* Utah Code Ann. § 17B-2-804 (LexisNexis 2004) (current version at *id*. § 17B-1-904 (2009)); *id*. § 17A-1-205 (2004) ("Each special district under this title is subject to the provisions of Title 17B, Chapter 2, Part 8, Collection of Water and Sewer Service Fees, to the same extent as if the special district were a local district under Title 17B, Chapter 2, Local Districts."). Relying on these statutes, Bennion claims that the District can recover no more than $200 for the three-year period from May 3, 2004, until the April 30, 2007 repeal of section 17A-1-205. The District denies that these statutes provide such a limit on its recovery. Accordingly, we must determine the impact of section 17B-2-804 on the District's recovery for fees, costs, expenses, or interest arising out of water fees incurred from May 3, 2004, through April 29, 2007.

¶31    Effective April 30, 2007, the Utah Legislature repealed section 17B-2-804 and renumbered it as section 17B-1-904 without modification of the relevant language.[6] *Compare* Utah Code Ann. § 17B-2-804 (LexisNexis 2004), *with id*. § 17B-1-904 (2009). Section 17A-1-205 was also repealed, but not replaced, in 2007. *See* Act of Apr. 30, 2007, ch. 329, § 468, 2007 Utah Laws 1723, 2007–14. Thus, the repeal of section 17A-1-205 left section 17B-1-904 applicable only to local districts. One year later, the legislature remedied this apparent oversight by enacting section 17D-1-106, which became effective May 5, 2008.[7] *See* Utah Code Ann. § 17D-1-106 (LexisNexis 2009) (current version at *id*. § 17D-1-106 (Supp. 2012)). During the approximate one-year gap between the repeal of section 17A-1-205 and the adoption of section 17D-1-106, Bennion concedes that there was no limit on the amount that a special service district could recover from a residential customer.

---

6.  In relevant part, section 17B-1-904 states, "A local district may file a civil action against the customer if the customer fails to pay the past due service fees and collection costs within 30 calendar days from the date on which the local district mailed notice under Subsection (2)(b)." Utah Code Ann. § 17B-1-904(5)(a) (LexisNexis 2009); *see also id*. § 17B-2-804(3)(a) (2004) (same). It further provides, "In a civil action under this Subsection (5), a customer is liable to the local district for an amount that: (A) consists of past due service fees, collection costs, interest, court costs, a reasonable attorney fee, and damages; and (B) if the customer's property is residential, may not exceed $200." *Id*. § 17B-1-904(5)(b)(i) (2009); *see also id*. § 17B-2-804(3)(b)(i) (2004) (same).

7.  Section 17D-1-106 states, "A special service district is, to the same extent as if it were a local district, subject to and governed by . . . Title 17B, Chapter 1, Part 9, Collection of Service Fees and Charges." *Id*. § 17D-1-106(1)(f) (LexisNexis 2009) (current version at *id*. § 17D-1-106(1)(g) (Supp. 2012)); *see also id*. § 17A-1-205 (2004) (same).

¶32    As of May 8, 2008, when section 17D-1-106 made section 17B-1-904 applicable to special service districts, Bennion claims that the District's right to recover money damages from a residential customer in a civil action was again statutorily limited to $200. On appeal, however, Bennion challenges only the trial court's award of interest at 12% after May 8, 2008.

¶33    We now undertake the analysis of the statutes that Bennion argues placed restrictions on the District's recovery for the two contested time periods. We begin with section 17B-2-804, which governs fees incurred from May 3, 2004, through April 29, 2007. Although the relevant language of section 17B-2-804 is identical to that contained in section 17B-1-904, the focus of Bennion's argument under each statute, which we explain in more detail below, is not. Therefore, we separately address the impact of each statute on the District's right to recover interest on unpaid water fees.

1. Section 17B-2-804

¶34    Bennion argues that the plain language of section 17B-2-804 limits the fees and interest that the District can collect to $200. *See id.* § 17B-2-804(3)(b)(i)(B) (LexisNexis 2004). The District disagrees and contends that section 17B-2-804 is ambiguous, that the other provisions in the statute are inconsistent with such a limit, and that the intent and purpose of Title 17B, Chapter 2, Part 8, was to allow a service district to collect all delinquent user fees.

¶35    "Principles of statutory interpretation require us to look first [] to the plain language with the primary objective of giving effect to the legislature's intent." *In re R.B.F.S.*, 2012 UT App 132, ¶ 15, 278 P.3d 143 (alteration in original) (citation and internal quotation marks omitted). In doing so, we read "[t]he plain language of a statute . . . as a whole, and its provisions [should be] interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (first alteration in original) (citation

and internal quotation marks omitted). Additionally, "[w]hen interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 32, 219 P.3d 918. When the plain language is clear, no other interpretive tools are needed because our inquiry is complete. *See C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 13, 977 P.2d 479 ("[I]t is elementary that we do not seek guidance from legislative history and relevant policy considerations when the statute is clear and unambiguous."). If the language of the statute "is ambiguous—in that its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis—we generally resort to other modes of statutory construction and 'seek guidance from legislative history' and other accepted sources." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (quoting *Taylor ex rel. Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159, 167 (Utah 1996) (Durham, J., dissenting)).

¶36     Section 17B-2-804 provides,

> A customer is liable . . . for past due service fees and collection costs if: (a) the customer has not paid service fees . . . ; (b) the [special service] district mails the customer notice as provided in Section 17B-2-805; and (c) the past due service fees remain unpaid 15 days after the local district has mailed notice.

*See* Utah Code Ann. § 17B-2-804(1) (LexisNexis 2004). If the past due service fees and collection costs remain unpaid thirty days after the district mails notice to the customer as provided in section 17B-2-805 (the Form Notice), *see id.* § 17B-2-805 (current version at *id.* § 17B-1-904(4) (2009)), the district may make an offer to settle with the customer without filing a civil action, *see id.* § 17B-2-804(2) (current version at *id.* § 17B-1-904(3) (2009)). The settlement amount

may include past due service fees, collection costs, and damages, as well as an attorney fee "not to exceed $50," but "if the customer's property is residential, [the settlement amount] may not exceed $100." *See id.* § 17B-2-804.

¶37    If the customer does not pay within thirty days of the date the district mailed the Form Notice, another option available to a special service district is to bring a civil action. *See id.* § 17B-2-804(3). The express statutory language states that in such a civil action, "a customer is liable to the local district court for *an amount that*: (A) *consists of* past due service fees, collection costs, interest, court costs, a reasonable attorney's fee, and damages; *and* (B) if the customer's property is residential, *may not exceed $200*." *Id.* § 17B-2-804(3)(b)(i) (emphasis added). The District argues that the statute is ambiguous and that the correct interpretation limits only collection costs to $200. However, the District provides no argument as to why the other items listed in section 17B-2-804(3)(b)(i)(A), including past due service fees, interest, court costs, a reasonable attorney fee, and damages do not fall within the two hundred dollar limitation. Moreover, the words "an amount," "that," and "consists of" all indicate that the legislature intended for one comprehensive award under the provision and that, when it involved a residential property, the amount of that total award "may not exceed $200." *See id*. Because "[w]e presume that the legislature used each word advisedly and [gave] effect to each term according to its ordinary and accepted meaning," we find no ambiguity in section 17B-2-804(3)(b)(i). *See Pearson v. South Jordan City*, 2012 UT App 88, ¶ 18, 275 P.3d 1035 (citation and internal quotation marks omitted). Furthermore, we reject the District's invitation to ignore the express statutory language that includes "past due service fees, collection costs, interest, court costs, a reasonable attorney's fee, and damages," as the components of "an amount" which cannot exceed $200 for residential property. *See* Utah Code Ann. § 17B-2-804(3)(b)(i).

¶38    Nevertheless, the District argues that a plain reading of the $200 residential limitation would undermine the other provisions

found in section 17B-2-804, as well as the intent and purpose of Title 17B, Chapter 2, Part 8. In particular, the District argues that such an interpretation would render the right to bring a civil action meaningless because the court's "filing fee alone would be more than $200." Our "duty to give effect to the plain meaning of a statute . . . should give way if doing so would work a result so absurd that the legislature could not have intended it." *State v. Jeffries*, 2009 UT 57, ¶ 8, 217 P.3d 265. If the plain language of the statute "creates an absurd, unreasonable, or inoperable result, we assume the legislature did not intend that result." *Id.* In order "[t]o avoid an absurd result, we endeavor to discover the underlying legislative intent and interpret the statute accordingly." *Id.*; *see also In re Z.C.*, 2007 UT 54, ¶ 12, 165 P.3d 1206 ("In defining the parameters of what constitutes an absurd result, we note the inherent tension in this canon of construction between refraining from blind obedience to the letter of the law that leads to patently absurd ends and avoiding an improper usurpation of legislative power through judicial second guessing of the wisdom of a legislative act."). "A further exception to the plain meaning rule arises with our duty to read and interpret statutory provisions in harmony with other provisions in the same statute and with other related statutes." *Id*. ¶ 9. Essentially, "statute[s] should be construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *Id*. (alterations in original) (citation and internal quotation marks omitted).

¶39    Notwithstanding the District's contrary suggestion, our reading of the plain language in section 17B-2-804 is harmonious with Title 17B, Chapter 2, Part 8, as a whole. In particular, the section immediately following section 17B-2-804 leaves no doubt on this issue. In section 17B-2-805, the Utah Legislature has provided the Form Notice that must be sent to a delinquent customer before that customer is liable for past fees, the district can make a settlement offer, or the district can bring a civil action. *See* Utah Code Ann. §§ 17B-2-804, -805. The Form Notice must include the "[a]ccount or invoice number(s)" and the "[a]mount past due."

*See id.* § 17B-2-805(1)(d). In addition, the Form Notice must state, in relevant part,

> You are further notified that if you do not pay the past due amount and the $20 collection costs within 30 calendar days from the day on which this notice was mailed to you, an appropriate civil legal action may be filed against you for the past due amount, interest, court costs, attorney's fees, and damages in an amount equal to the greater of $100 or triple the past due amounts, *but the combined total of all these amounts may not exceed $200 if your property is residential*.

*See id.* (emphasis added).

¶40　The plain language of the Form Notice unambiguously provides that while a special service district can recover up to triple the past due amounts in overdue fees, interest, court costs, damages, and attorney fees when the delinquent customer is a commercial property owner, the maximum amount recoverable against a residential property owner may not exceed $200 for "the combined total of all these amounts." *Id.* There is simply no way to read the Form Notice as limiting only the collection costs to $200, as the District suggests. And we can conceive of no reason that the Utah Legislature would include a Form Notice that does not accurately inform the residential customer of the potential liability. Additionally, section 17B-2-801 defines "[c]ollection costs" as "an amount, not to exceed $20, to reimburse a [special service] district for expenses associated with its efforts to collect past due service fees from a customer." *Id.* § 17B-2-801(1) (current version at *id.* § 17B-1-904 (2009)). If collection costs cannot, by definition, exceed $20, a $200 limit on the recovery of collection costs as argued by the

District would create an inherent inconsistency within Title 17B, Chapter 2, Part 8, as a whole.

¶41 Appellate courts have a "duty to read and interpret statutory provisions in harmony with other provisions in the same statute and with other related statutes." *Jeffries*, 2009 UT 57, ¶ 9. Essentially, "statute[s] should be construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *Id*. (citation and internal quotation marks omitted). When we harmonize the $200 recovery limitation for residential properties in a civil suit with other provisions of section 17B-2-804, it is not absurd, inoperative, superfluous, void, or insignificant. *See id.* ¶¶ 8–9. First, the $200 recovery cap in section 17B-2-804(3)(b)(i) has limited applicability because it does not apply to commercial property owners or other non-residential owners. *See* Utah Code Ann. § 17B-2-804(2)(b)(i)(B) (LexisNexis 2004) (current version at *id*. § 17B-1-904(5)(b)(i) (2009)). Additionally, there is nothing in section 17B-2-804(3) that prevents the District from bringing a single civil action to recover the $200 available each time a residential customer fails to pay past due service fees that were the subject of a Form Notice. *See id.* § 17B-2-804(3)(a) (2004). The Form Notice indicates that "if [a customer does] not pay the past due amount," then the District may pursue a civil action and collect as much as $200. *See id*. § 17B-2-805(1)(d) (current version at *id*. § 17B-1-904(4)(a)(iv) (2009)). That "[a]mount past due," must be listed in the Form Notice, thereby tying the $200 recovery to the amount stated in the Form Notice. *See id*. The District could send multiple Form Notices to a single residential customer, stating past due amounts from different invoices, and then bring a single civil action to collect the $200 available in past due service fees, costs, interest, and attorney fees for the failure to pay the amount stated in each Form Notice.

¶42 Furthermore, the provisions in section 17B-2-804 are not contradictory to or superfluous of the $200 recovery limitation. *See id*. §§ 17B-2-804, -805 (2004). Section 17B-2-804(2) provides that the District may offer to forego civil action if the customer pays an

amount, consisting of past due service fees, collection costs, prelitigation damages, and attorney fees, that may not exceed $100 when the customer's property is residential. *See id*. § 17B-2-804(2). Rather than showing a legislative intent contrary to the plain language of section 17B-2-804(3)(b)(i)(B), this provision indicates that the legislature has consistently provided special service districts with minimal financial incentive to pursue monetary sanctions against residential property owners.

¶43 The other remedies available to the District for the nonpayment of residential service fees coexist harmoniously with the $200 limitation on recovery prescribed by section 17B-2-804. Notably, the Utah Legislature provided special service districts with the remedy of discontinuing services in the event of nonpayment. *See id*. § 17B-2-802 (current version at *id*. § 17B-1-903 (2009)). Likewise, a special service district can "certify past due service fees and other amounts for which the customer is liable . . . to the treasurer or assessor of the county in which the customer's property is located" and, upon certification, that amount "become[s] a lien on the customer's property . . . ." *See id*. § 17B-2-803(1) (current version at *id*. § 17B-1-902 (2009)). Rather than conflicting with these alternative remedies, section 17B-2-804(5) expressly indicates that "[t]his chapter may not be construed to limit a local district that furnishes water or provides sewer service from obtaining relief to which it may be entitled under other applicable statute or cause of action." *Id*. § 17B-2-804(5) (2004). Thus, the plain reading of section 17B-2-804 functions harmoniously with the rest of Title 17B, Chapter 2, Part 8, by allowing a special service district to discontinue services or to file a lien against a delinquent residential property owner, but permitting it to recover only limited damages in a civil action.

¶44 While "[w]e recognize that a court should not follow the literal language of a statute if its plain meaning works an absurd result," we also acknowledge our duty "to interpret the words used by the legislature, not to correct or revise them." *Stewart v. Bova*, 2011 UT App 129, ¶ 21, 256 P.3d 230 (citations and internal

quotation marks omitted). The plain language of section 17B-2-804 limits a local district's recovery of delinquent fees, collection costs, interest, court costs, reasonable attorney fees, and damages in a civil action against a residential property to $200 when the customer fails to pay after receiving notice as provided in section 17B-2-805. This result is not "so absurd that the legislative body which authored the legislation could not have intended it." *See In re Z.C.*, 2007 UT 54, ¶ 13, 165 P.3d 1206. The limitation on recovery under each notice is indicative of the Utah Legislature's policy choice in favor of encouraging a local district to discontinue services quickly or place a lien on the property, rather than continuing to provide services and later seeking substantial damages from a residential property owner. The wisdom of that policy decision is reflected by the facts of this case, where the residential property owner requested that services be discontinued to avoid mounting excess water fees.

¶45    The plain language of section 17B-2-804 provides that a special service district may not recover more than $200 from a residential customer in a civil action brought after the customer has failed to pay within thirty days after statutory notice is sent. For each such failure to pay after statutory notice, the $200 limit applies to the combined total of past due service fees, collection costs, interest, court costs, reasonable attorney fees, and damages. *See* Utah Code Ann. § 17B-2-804(3)(b)(i). Thus, for any fees incurred between May 3, 2004, and April 29, 2007, the period that section 17B-2-804 was in effect and applicable to special service districts, the District's total recovery is limited to $200 for each Form Notice that it sent to Bennion identifying those past due amounts.[8] *See id.*

---

8.  At oral argument, Bennion acknowledged that the record on appeal does not indicate whether the District sent Bennion one or more Form Notices for fees incurred during this period and that "perhaps" the District sent a Form Notice once a month, but ultimately he claims that there was only one Form Notice sent

(continued...)

§ 17B-2-804(3)(b)(i) (current version at *id.* § 17B-1-904(5)(b)(i) (2009)); *id.* § 17B-2-805 (2004) (current version at *id.* § 17B-1-904(4)(a)(iv) (2009)). We therefore remand for determination of proper fees for the period of May 3, 2004, through April 29, 2007.

2. Section 17B-1-904

¶46    When the Utah Legislature repealed and renumbered section 17B-2-804 as section 17B-1-904, it included the Form Notice language. *Compare* Utah Code Ann. § 17B-2-805 (LexisNexis 2004), *with id.* § 17B-1-904(4)(a)(iv) (2009). This section remains in effect today. Because the language of section 17B-1-904 is identical to that used in section 17B-2-804, we interpret these provisions consistently as limiting the District's recovery to $200 for the combined total of the water fees, costs, interest, and attorney fees that remain unpaid after statutory notice is sent to a residential customer.

¶47    The trial court included prejudgment interest of $61,155 in the judgment it entered, and it also awarded postjudgment interest of 12% per annum until that judgment is paid in full.[9] Bennion argues that the trial court erred by failing to apply the $200 per Form Notice limitation to the interest accrued from the date section 17B-1-904 became effective to special service districts, May 5, 2008, through the present.[10] *See id.* § 17D-1-106(f) (2009) (current version at *id.* § 17D-1-106(1)(g) (Supp. 2012)) (applying the restrictions to

---

8.  (...continued)
during the period.

9.  The water fees at issue in this case were incurred from February 2004 through October 2007.

10.  Because Bennion does not argue that the trial court's award of base user fees accumulated during that time period is also subject to the $200 limitation under section 17B-1-904, we do not disturb the trial court's ruling on those fees.

special service districts)). Although the District disputes the applicability of section 17B-2-804, it offers no response to Bennion's argument that when the Utah Legislature made section 17B-1-904 applicable to special service districts on May 5, 2008, it limited all sums due, including interest, from that date forward to $200 per Form Notice.

¶48    In considering whether the trial court's order incorrectly included interest at 12% per annum after May 8, 2008, we again begin with the plain language of the statute. *See In re R.B.F.S.*, 2012 UT App 132, ¶ 15, 278 P.3d 143. Section 17B-1-904, like its predecessor section 17B-2-804, provides that before "a customer is liable to a [special] service district for past due service fees and collection costs," the special service district must "mail . . . the customer notice as provided in Subsection (4)." *See* Utah Code Ann. § 17B-1-904(2) (2009); *id.* § 17D-1-106(1)(f). Section 17B-1-904(4) requires that the notice inform the customer that,

> if you do not pay the past due amount and the $20 collection costs within 30 calendar days . . . , an appropriate civil legal action may be filed against you for the past due amount, interest, court costs, attorney fees, and damages . . . , but the combined total of all these amounts may not exceed $200 if your property is residential.

*See id.* § 17B-1-904(4)(a)(iii). As with section 17B-2-805, section 17B-1-904(4) leaves no doubt that the total recovery available to the district against a residential customer who does not pay within thirty days of notice is $200. *Compare id.* § 17B-1-904(4), *with id.* § 17B-2-805 (2004); *see also id.* § 17B-1-904(5)(b) (2009) (providing that a district's recovery in a civil action against a residential customer "may not exceed $200"). The components of the amount limited to $200 expressly includes "interest." *See id.* § 17B-1-904(4)(a)(iii); *id.* § 17B-1-904(5)(b)(i)(A). Thus, we agree with

Bennion that the Utah Legislature has limited the amount of interest that the District can recover.

¶49 However, as previously discussed, the $200 limitation in section 17B-1-904 is applicable to the past due amounts identified by "[a]ccount or invoice number(s)" in the Form Notice. *See id.* § 17B-1-904(4)(a)(iii). The interest limitation in the statute also relates specifically to the fees that are the subject of the Form Notice. *See id.* § 17B-1-904(5)(a). For fees incurred before the adoption of section 17B-2-804, or during the one-year gap between the adoption of section 17B-1-904 and the adoption of section 17D-1-106, there was no requirement that the District send a Form Notice, and likewise no limitation on the principal amount or interest it could recover. Thus, we reject Bennion's argument that the trial court improperly awarded interest at 12% per annum on unpaid water fees first incurred during those periods. With respect to water fees incurred while section 17B-2-804 or section 17B-1-904 were applicable to special service districts, however, the Utah Legislature has expressly limited the District's recovery, inclusive of interest, to $200 under each Form Notice. Therefore, the trial court could not ignore that express limitation by awarding the District interest over the $200 limit incurred while either of those statutes applied to special service districts. We therefore remand for a determination of that amount.

## II. Ownership and Maintenance of the Bennion Line

¶50 Next, Bennion contends that summary judgment was improperly granted in the Current Case because the evidence provided to the trial court raised an issue of material fact concerning whether the District was responsible for the maintenance of the Bennion Line.[11] Specifically, he contends that

___

11. Bennion also claims that even if the District would not generally be responsible for maintenance of the Bennion Line, it

(continued...)

under controlling Utah precedent, the District became responsible for maintenance of the Bennion Line after the 2002 court granted an easement to the District in its order of immediate occupancy. Based on that proposition, Bennion argues that the District is responsible for any excess water fees from the date of the order, September 22, 2006, until October 2007, when the District repaired the Bennion Line and the excess water charges ceased. The District counters that the trial court correctly determined that Bennion was responsible for water released from the Bennion Line.[12]

¶51    Our task of reviewing the correctness of the trial court's summary judgment ruling is complicated by its execution of an order prepared by counsel and captioned as "Findings of Fact and Conclusions of Law on Plaintiff's Motion for Summary Judgment." *See Thayne v. Beneficial Utah, Inc.*, 874 P.2d 120, 125 (Utah 1994) (noting that the trial court "shall . . . issue a brief written statement of the ground for its decision" granting summary judgment, but "need not enter findings of fact and conclusions of law" (citations and internal quotation marks omitted)). Because summary

---

11. (...continued)
undertook that responsibility when it acquired an easement over Bennion's property through the order of immediate occupancy. Because Bennion did not preserve this issue by first raising it in the trial court, we decline to consider it. *See* Utah R. App. P. 24(a)(5); *Marchand v. Marchand*, 2006 UT App 429, ¶ 8, 147 P.3d 538 ("As a general rule, appellate courts will not consider an issue . . . raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." (citation and internal quotation marks omitted)).

12. The District also contends that because Bennion has failed to marshal the evidence, this court should assume the findings were correct and adequately supported by the record. However, marshaling has no application to a statement of uncontested facts supporting summary judgment.

judgment is appropriate only when there are no issues of material fact in dispute, we assume that these "findings" were meant to reflect the uncontested facts supporting the trial court's decision. *See Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 12, 270 P.3d 430 ("Our review is limited to determining whether the district court correctly applied the summary judgment standard *in light of the undisputed material facts*." (citations and internal quotation marks omitted)).

¶52    Those undisputed facts include that "[the District] is not responsible for maintenance of lateral water lines that connect to the main water lines of [the District's] water delivery system. Rather, individual property owners are responsible for the maintenance of lateral water lines servicing their properties." Additionally, the undisputed facts state, "Prior to November 1997 through March 31, 2009, Bennion has been the owner of [the Bennion Line]," and, "Bennion is responsible for water taken out of the [Bennion Line] regardless of whether or not he personally utilizes the water." For convenience, we refer to these undisputed facts as the Responsible Party Facts.

¶53    Although couched as a challenge to a factual finding, Bennion essentially contends that the Responsible Party Facts are disputed. However, he is precluded from disputing them by the doctrine of res judicata, which refers "to the overall doctrine of the preclusive effects to be given to judgments." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 20, 285 P.3d 1157 (citations and internal quotation marks omitted). Res judicata includes "two branches"—"claim preclusion and issue preclusion." *Id*. (citations and internal quotation marks omitted). "Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action." *Id.* (citation and internal quotation marks omitted). Under issue preclusion, "'parties or their privies'" are prevented "'from relitigating facts and issues in the second suit that were fully litigated in the first suit.'" *Id*. ¶ 23 (emphasis omitted) (quoting *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 41, 250 P.3d 465).

> Issue preclusion applies only when the
> following four elements are satisfied:
> (i) the party against whom issue
> preclusion is asserted was a party to or
> in privity with a party to the prior
> adjudication; (ii) the issue decided in
> the prior adjudication was identical to
> the one presented in the instant action;
> (iii) the issue in the first action was
> completely, fully, and fairly litigated;
> and (iv) the first suit resulted in a final
> judgment on the merits.

*Id.* (citations and internal quotation marks omitted).

¶54    Bennion's challenge to the Responsible Party Facts is barred by the issue preclusion branch of the res judicata doctrine because this issue was litigated and determined in the 2002 Case. There, the 2002 court ruled that "[the District] is not responsible for maintenance of lateral water lines that connect to the main water lines of [the District's] water delivery system. Rather, individual property owners are responsible for the maintenance of lateral water lines servicing their properties." Additionally, the 2002 court ruled that "[p]rior to November 1997 through [November 25, 2008], [Bennion] has been the owner of [the Bennion Line] . . . ." The 2002 court further determined that "[Bennion] is responsible for the water that is taken out of [the District's] water system by the [Bennion Line] regardless of whether [Bennion] actually uses such water or whether the water is lost through leaks located in the [Bennion Line]." The arguments Bennion raised in the 2002 Case about ownership and maintenance of the water line are identical to the arguments that he makes in the Current Case. The 2002 Case was between the same parties as the Current Case, the District and Bennion; the issue was completely, fully, and fairly litigated in a trial on the merits; and because Bennion did not timely appeal the 2002 court's decision, *see North Fork Special Serv. Dist. v. Bennion,*

2006 UT App 447U (mem.), it is final. As a result, Bennion is precluded from challenging the Responsible Party Facts in the Current Case by the issue preclusion branch of res judicata. *See Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶¶ 12–13, 52 P.3d 1267.

### III. Attorney Fees

¶55 Finally, Bennion asserts that the trial court erred when it awarded the District its attorney fees under Utah Code section 78B-5-825 because, despite the trial court's finding that Bennion's actions and continued litigation were pursued in bad faith, his defenses were meritorious. Section 78B-5-825 provides, "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). "Accordingly, a finding of both lack of merit and bad faith are required to award attorney fees." *In re Olympus Constr., LC*, 2009 UT 29, ¶ 29, 215 P.3d 129.

¶56 In determining whether there is merit to a claim, an appellate court focuses on whether the claim was "frivolous or of little weight or importance having no basis in law or fact." *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868 (citation and internal quotation marks omitted). Where an appellate court finds as a matter of law that a party's claim has merit, it need not reach the second, factual "bad faith" element of section 78B-5-825. *See In re Olympus Constr.*, 2009 UT 29, ¶ 8 n.1.

¶57 Bennion presented arguments to the trial court that sections 17B-2-804 and 17B-1-904 limit the water fees, costs, attorney fees, and interest that a special service district can recover from a residential customer in a civil action brought after the customer refuses to pay the amounts identified in a Form Notice. In granting the District's motion for summary judgment, the trial court determined that "Bennion's actions and continued litigation had

been pursued in bad faith." However, the trial court made no determination regarding the merit of Bennion's claims. Moreover, our analysis that sections 17B-2-804 and 17B-1-904 plainly limit the District's recovery establishes that Bennion's claims were neither "frivolous" nor "of little weight or importance having no basis in law or fact." *See Warner*, 2000 UT 102, ¶ 22 (citation and internal quotation marks omitted). Accordingly, we reverse the trial court's award of attorney fees.

CONCLUSION

¶58    The trial court erred in entering summary judgment in amounts exceeding $200 per Form Notice for the water fees incurred while either section 17B-2-804 or section 17B-1-904 were in effect and applicable to special service districts. *See* Utah Code Ann. § 17B-2-804 (LexisNexis 2004); *id*. § 17B-1-904 (2009); *id*. § 17A-1-205 (2004); *id*. § 17D-1-106 (2009). Because Bennion's claims were not without merit, the trial court erred in awarding attorney fees to the District under section 78B-5-825. *See id*. § 78B-5-825 (2012).

¶59    The Summary Judgment is vacated, with instructions to enter a new judgment as follows:

> 1.    The actual past due water fees from February 28, 2004, until the adoption of sections 17B-2-804 and 17A-1-205 on May 3, 2004, plus all collection costs, interest, attorney fees, and damages incurred with respect to those past due service fees;

> 2.    An amount up to $200 for the combined total of the past due service fees, collection costs, interest, court costs, attorney fees, and damages for each Form Notice the District sent to Bennion for water fees incurred from May 3, 2004, through April 29, 2007;

3.  The actual past due water fees incurred from the repeal of section 17A-1-205 on April 30, 2007, until the adoption of section 17D-1-106 on May 5, 2008, plus all collection costs, interest, attorney fees, and damages incurred with respect to those past due service fees; and

4.  Interest in an amount that does not exceed $200 for each Form Notice that the District sent to Bennion for water fees incurred on or after May 5, 2008.

_____