2009 UT 57

**STATE of Utah, Plaintiff and Appellee,**

v.

**Edgar JEFFRIES, Defendant
and Appellant.**

**No. 20080009.**

Supreme Court of Utah.

Sept. 1, 2009.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Jacey Skinner, Salt Lake City, for plaintiff.

Linda M. Jones, Wesley J. Howard, Salt Lake City, for defendant.

WILKINS, Justice:

## INTRODUCTION

¶ 1 Defendant Edgar Jeffries appeals his conviction for distribution of a counterfeit substance and asks us to determine whether his actions fall under the definition of a counterfeit substance as defined in the Utah Controlled Substance Act, Utah Code section 58–37–2(1)(i), or an imitation controlled substance as defined in the Imitation Controlled Substance Act, Utah Code section 58–37b–2(3).

## BACKGROUND

¶ 2 On April 30, 2007, Officer Earl Rose was working undercover near 200 South and 500 West in Salt Lake City. At about 6:00

p.m., Officer Rose saw a woman walking with Mr. Jeffries. The woman approached Officer Rose and asked what he wanted. Officer Rose replied that he was "looking for a $20.00 rock," which is street slang for a unit of crack cocaine. The woman then walked over to Mr. Jeffries and spoke with him. Shortly thereafter, Mr. Jeffries approached Officer Rose with a small package referred to as a "twist," the common way of packaging crack cocaine. Officer Rose did not see inside the package before exchanging $20 for it. When he opened the package, Officer Rose quickly discovered that it contained small chunks of drywall instead of cocaine.

¶ 3 The State charged Mr. Jeffries with unlawful distribution of a counterfeit substance, a second degree felony. After a preliminary hearing, Mr. Jeffries was bound over as charged. Mr. Jeffries filed a motion to quash and argued that the State should have instead charged him with unlawful distribution of an imitation controlled substance, a class A misdemeanor. The district court denied the motion, whereupon Mr. Jeffries entered a conditional guilty plea to an amended charge of attempted unlawful distribution of a counterfeit substance, a third degree felony, and reserved the right to challenge the district court's ruling on appeal. Mr. Jeffries brought his timely appeal before the court of appeals, and the court of appeals certified the case to this court.

## STANDARD OF REVIEW

¶ 4 The issue on appeal is a matter of statutory interpretation that we review for correctness, "affording no deference to the district court's legal conclusions." *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426.

## ANALYSIS

¶ 5 On appeal, Mr. Jeffries maintains his argument that the State improperly charged him with a felony offense under the Utah Controlled Substances Act (Counterfeit Act).[1] Under that Act, a counterfeit substance is defined as follows:

(i) any substance or container or labeling of any substance that without authorization bears the trademark, trade name, or other identifying mark, imprint, number, device, or any likeness of them, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed the substance which falsely purports to be a controlled substance distributed by, any other manufacturer, distributor, or dispenser; or

(ii) any substance that is represented to be a controlled substance.

Utah Code Ann. § 58–37–2(1)(i) (Supp.2008). In charging Mr. Jeffries, the State relied on section 58–37–2(1)(i)(ii).

¶ 6 Mr. Jeffries asserts that he should have instead been charged with a misdemeanor offense under the Imitation Controlled Substances Act (Imitation Act). That Act defines an imitation substance as "a substance that is not a controlled substance or counterfeit controlled substance, and which by overall dosage unit substantially resembles a specific controlled substance in appearance, including its color, shape, or size." *Id.* § 58–37b–2(3) (2007).

## I. RULES OF STATUTORY INTERPRETATION

¶ 7 When interpreting statutes, we first look to the plain language of the statute and give effect to that language unless it is ambiguous. *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520 (Utah 1997). Thus, a statutory provision should be read literally, unless it would result in an unreasonable or inoperable result. *Id.* "When examining the statutory language we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276.

¶ 8 Our duty to give effect to the plain meaning of a statute, however, should give way if doing so would work a result so absurd that the legislature could not have intended it. *See Savage v. Utah Youth Vill.,*

---

1. The Utah Controlled Substances Act applies to the distribution of both controlled and counterfeit substances. Inasmuch as this opinion deals only with the counterfeit provisions of that act, we refer to it as the "Counterfeit Act."

2004 UT 102, ¶ 18, 104 P.3d 1242. Where a statute's plain language creates an absurd, unreasonable, or inoperable result, we assume the legislature did not intend that result. To avoid an absurd result, we endeavor to discover the underlying legislative intent and interpret the statute accordingly. *See Evans v. State*, 963 P.2d 177, 184 (Utah 1998) ("[O]ur primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve."); *State ex rel. Z.C.*, 2007 UT 54, ¶ 12, 165 P.3d 1206 ("In defining the parameters of what constitutes an absurd result, we note the inherent tension in this canon of construction between refraining from blind obedience to the letter of the law that leads to patently absurd ends and avoiding an improper usurpation of legislative power through judicial second guessing of the wisdom of a legislative act.").

¶ 9 A further exception to the plain meaning rule arises with our duty to read and interpret statutory provisions in harmony with other provisions in the same statute and with other related statutes. *State v. Moreno*, 2009 UT 15, ¶ 10, 203 P.3d 1000. In essence, "statute[s] should be construed ... so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 538 (Utah 1983)(quoting 2A *Sutherland Statutory Construction*, § 46.06 (1973)). Therefore, to the extent that conflict exists or arises within statutory language, our duty is to interpret the language, affording each provision a meaningful purpose and separating convoluted statutes with a meaningful distinction.

## II. CONFLICT BETWEEN THE COUNTERFEIT ACT AND THE IMITATION ACT

¶ 10 The problem we encounter in this case is that taking section 58–37–2(1)(i)(ii) as written on its face would lead to absurd results and impermissible overlap between the Counterfeit Act and the Imitation Act. We note that the legislature enacted both the Imitation Act and the Counterfeit Act, and it necessarily follows that the legislature must have intended some meaningful distinction between the two. We therefore interpret the two Acts so that the statutes do not work an absurd result and so that the Acts are sufficiently independent from each other. In light of that objective, the only acceptable interpretation is to read section 58–37–2(1)(i)(ii) as applying only to substances masquerading as legitimate substances. Thus, for the reasons set out below, we read the Counterfeit Act to be applicable when a defendant tries to pass off a substance as something legitimate or lawful.

¶ 11 First, looking at the statute as a whole, our interpretation of section 58–37–2(1)(i)(ii) is consistent with the overall purpose of the Counterfeit Act. Because a literal interpretation of the "any substance that is represented to be a controlled substance" language in section 58–37–2(1)(i)(ii) would reach an exceptionally broad range of substances and circumstances—far beyond those defined in section 58–37–2(1)(i)(i)—we determine that such could not have been the legislature's intent, and we decline to read section 58–37–2(1)(i)(ii) as a catchall provision. We note that if section 58–37–2(1)(i)(ii) were to encompass any substance represented by words *or conduct* as a controlled substance, section 58–37–2(1)(i)(i) would be rendered superfluous because there would be virtually no circumstances where behavior covered by subsection (i) would not also be covered by subsection (ii). Thus, we read the statute to contain a more meaningful distinction, such that each provision is attributed a significant and operative purpose. Section 58–37–2(1)(i)(i) is essentially limited to the distribution of "look alike" pharmaceuticals, and section 58–37–2(1)(i)(ii) should therefore refer to something along the same lines.

¶ 12 Second, to avoid absurd results, we must assume that section 58–37–2(1)(i)(ii) contains a falsity element regarding the representation of a substance as a legitimate or lawful controlled substance. Notably, if any substance could qualify as a counterfeit based on either a true or a false representation, then even an accurate and otherwise lawful representation of a prescription drug could violate the statute. A broad interpretation of section 58–37–2(1)(i)(ii), taken to its

logical conclusions, would therefore result in criminalizing legitimate behavior. Prior to 1987, only false representations were punishable under the Counterfeit Act.[2] In 1987, the legislature split the definition of counterfeit substance into two parts. While section 58–37–2(1)(i)(i) preserved the falsity language, the second part of the statute, section 58–37–2(1)(i)(ii), did not. We assume, however, that the legislature did not intend to criminalize the legitimate distribution of controlled substances. Therefore, to avoid absurd results, we assume that the falsity language unintentionally slipped out of section 58–37–2(1)(i)(ii) when the legislature amended the definition.

■■■ ¶ 13 Third, we note that the classification of a substance as an imitation substance focuses on the substance's appearance. Thus, for there to be a distinction between the Imitation Act and the Counterfeit Act, counterfeit substances must be classified by attributes or characteristic beyond mere presentation or appearance. While it may be theoretically possible to see a distinction between the two Acts based on the subtle difference between representation by description or presentation and representation by appearance alone, we decline to adopt that interpretation. Doing so would allow distribution of benign "look alike" substances to be punishable under the Imitation Act, while the same behavior would also be punishable under the Counterfeit Act if the distributer made an affirmative representation that the substance was a controlled substance. It seems implausible that distribution of a "look alike" substance would occur without some false representation as to its identity or contents. Thus, in many instances, the prosecutor could choose between charging a felony or a misdemeanor offense based on identical behavior.[3]

■■ ¶ 14 Thus, the distinction that we reason was intended by the legislature between the Imitation Act and the Counterfeit Act differentiates between the statutes based on the type of substance regulated and not on the type of representation used by the defendant. This conclusion illuminates a clear and necessary distinction between the statutes by delineating the definition of "imitation" drugs as those falsely represented to be illicit substances and "counterfeit" drugs as those falsely represented to be legitimate substances. Thus, substances falsely represented to be from a manufacturer, distributor, or dispenser are exclusively regulated within the provisions of the Counterfeit Act (representation by appearance or packaging under section 58–37–2(1)(i)(i) and representation by oral or other means under section 58–37–2(1)(i)(ii)). In other words, if a substance appears to be legitimate due to any false verbal or written communication, then it is a counterfeit. In contrast, an imitation substance is one that appears to be an illicit substance of the variety which would probably never be identified by branding or manufacturer's marks.

## III. THE *SHONDEL* DOCTRINE

■ ¶ 15 The *Shondel* doctrine, set forth in *State v. Shondel*, 22 Utah 2d 343, 453 P.2d

---

2. In 1987, the legislature amended the definition of counterfeit substance as follows:

> (a) any [controlled] substance or container or labeling of any [controlled] substance that[,] without authorization bears the trademark, trade name, or other identifying mark, imprint, number, [or] device, or any likeness [thereof] of them, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed the substance which [thereby] falsely purports [or is represented] to be [the product of, or to have been] a controlled substance distributed by, [such] any other manufacturer, distributor, or dispenser; or (b) any substance that is represented to be a controlled substance.

1987 Utah Laws 1106.

3. The job of the legislature is to define crimes, prescribe penalties, and establish guidelines for prosecutors, judges, and juries for enforcing the law. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *State v. Angus*, 581 P.2d 992, 994–95 (Utah 1978). Where the distinction between crimes is insufficient, the danger arises that police officers, prosecutors, and juries may pursue their personal predilections in violation of due process. *See Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Greenwood v. City of North Salt Lake*, 817 P.2d 816, 819 (Utah 1991). *But see State v. Mohi*, 901 P.2d 991, 1003 (Utah 1995) ("Selecting a charge to fit the circumstances . . . is a necessary step in the chain of any prosecution" and "requires a legal determination . . . as to which elements of an offense can likely be proved at trial.").

146 (1969), and its progeny, states that "where two statutes define exactly the same penal offense, a defendant can be sentenced only under the statute requiring the lesser penalty." *State v. Bluff*, 2002 UT 66, ¶ 33, 52 P.3d 1210. Further, this rule is restricted to circumstances where two statutes contain the same elements and proscribe the exact same conduct. *See State v. Gomez*, 722 P.2d 747, 749 (Utah 1986).

¶ 16 Mr. Jeffries contends that if the definition of counterfeit substance is interpreted broadly, he would nevertheless be entitled to proceedings under the Imitation Act because the *Shondel* doctrine would apply. In light of our interpretation of section 58–37–2(1)(i)(ii), which creates a distinction between the Counterfeit Act and the Imitation Act, there is no overlap between the acts, and we need not address the issue of whether *Shondel* applies in this case.

## CONCLUSION

¶ 17 We conclude that the definition of counterfeit substance found in Utah Code sections 58–37–2(1)(i)(i) and 58–37–2(1)(i)(ii) is limited to substances falsely represented to be legitimate controlled substances. Hence, section 58–37–2(1)(i)(ii) only encompasses substances falsely represented, by means other than false markings, to be from a legitimate manufacturer, distributor, or dispenser. Accordingly, a substance falsely represented to be an illicit street drug does not fall under the definition of counterfeit substance, but would fall under the definition of imitation substance.

¶ 18 Consistent with this opinion, the holding of the district court is reversed and the case is remanded for proceedings under the Imitation Controlled Substances Act.

¶ 19 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.