2013 UT App 38

# THE UTAH COURT OF APPEALS

T3 PROPERTIES, LLC,

*Plaintiff and Appellee,*

*v.*

PERSIMMON INVESTMENTS, INC.,

*Defendant and Appellant.*

Opinion
No. 20110445-CA
Filed February 22, 2013

Third District, Salt Lake Department
The Honorable L.A. Dever
No. 090906364

Michael T. Moss, Attorney for Appellant
Ronald G. Russell and Rodger M. Burge,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR.
and J. FREDERIC VOROS JR. concurred.

ROTH, Judge:

¶1     This dispute concerns the interpretation of statutes that govern the creation of judgment liens (the judgment lien statute). *See* Utah Code Ann. §§ 78-22-1, -1.5 (Lexis Supp. 2001) (effective until July 1, 2002) (current version at *id.* §§ 78B-5-202, -201 (LexisNexis 2012)). In the district court, the parties both asserted competing claims for declaratory relief, requesting that the court decide whether Defendant Persimmon Investments, Inc.

(Persimmon) has a judgment lien on a parcel of property (the Property), whose record owner is Plaintiff T3 Properties, LLC (T3). Persimmon and T3 brought cross-motions for partial summary judgment. The district court granted partial summary judgment in favor of T3 and denied Persimmon's cross-motion. We affirm.

BACKGROUND[1]

¶2      In 2000, Chad A. Harding transferred the Property, located in Salt Lake County, to Brandon Earl.[2] In March 2001, Larry Larson filed in Salt Lake County a lawsuit against Earl (the Larson Lawsuit). The district court entered a default judgment against Earl in favor of Larson in June 2001 for approximately $75,000 (the Judgment).

¶3      In January 2002, Earl executed a quit claim deed conveying any interest he had in the Property back to Harding. This transfer was recorded in January 2003. Then, "[t]hrough mesne

---

[1]In reviewing a district court's decision to grant or deny summary judgment, we "view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Because the district court ultimately granted T3's motion for partial summary judgment and denied Persimmon's cross-motion, we recite the facts favorably to Persimmon.

[2]The parties disputed below whether any interest in the Property had ever actually been transferred to Earl, and a similar argument has been raised on appeal. However, in deciding the parties' cross-motions for partial summary judgment, the district court apparently assumed that the Property had been transferred from Harding to Earl. Because that assumption favors the appellant, Persimmon, we recite the facts accordingly and, therefore, need not resolve this issue. *See supra* n.1.

conveyances," the Property was eventually transferred to T3 in September 2006, and the conveyance was recorded that same month.

¶4      In February 2009, Persimmon recorded in the Salt Lake County Recorder's Office a notice of assignment of the Judgment from Larson and asserted that it had a judgment lien on the Property. Over the next few months, Persimmon initiated efforts to execute on the Judgment by having the Property sold. Persimmon also filed with the district court in the Larson Lawsuit a document titled "Information Statement."[3]

¶5      When Persimmon attempted to execute on the Judgment, T3 sent a notice informing Persimmon that it did not have a judgment lien on the Property and asserting that Persimmon's attempts to execute on the judgment constituted a wrongful lien. Nonetheless, Persimmon went ahead with the execution sale of the Property in April 2009 and then purchased the Property at the sale.

¶6      In April 2009, T3 filed a complaint against Persimmon, and Persimmon answered and counterclaimed. Among other things, both parties made competing claims for declaratory relief, both of which focused on whether the Judgment created a judgment lien on the Property under the judgment lien statute. Persimmon and T3 asserted differing interpretations of the statute: Persimmon contended in essence that the original entry of the Judgment itself sufficed to create a judgment lien on the Property, while T3 argued that the statute required additional steps that Persimmon had failed to take before the Property was transferred from Earl back to Harding in January 2002.

¶7      T3 and Persimmon filed cross-motions for partial summary judgment on their declaratory relief claims. The district court

---

[3]Persimmon and Larson acted in concert to execute on the Judgment. For ease of explanation, however, we will simply refer to Persimmon as the acting party.

granted T3's motion and denied Persimmon's, concluding that the Judgment had not created a judgment lien on the Property before January 2002 when Earl transferred the Property back to Harding, T3's predecessor in interest. Thus, as a consequence, Persimmon had no right to execute on the Property and accordingly had no claim to ownership by virtue of its purchase of the Property at the execution sale.[4] Persimmon appeals.

ISSUE AND STANDARDS OF REVIEW

¶8     Persimmon argues that the district court erred in granting partial summary judgment to T3. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). The district court's decision to grant a motion for summary judgment presents a question of law that is reviewed for correctness. *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256. Here, the relevant facts are generally not in dispute and the legal issue underlying summary judgment involves interpretation of the judgment lien statute. Issues of statutory interpretation also present a question of law and are reviewed for correctness. *Id.*

ANALYSIS

I. The District Court Correctly Granted Summary Judgment to
T3 Because Persimmon Failed To Comply with the Requirements
of the Judgment Lien Statute.

---

[4]After the district court concluded that Persimmon did not have a judgment lien on the Property, T3 moved to voluntarily dismiss its remaining claims without prejudice.

¶9     The issue before us is whether the Judgment became a judgment lien on the Property when it was entered in June 2001 and thus before Earl transferred the Property back to Harding in January 2002. Resolution of this issue requires interpretation of the judgment lien statute. When confronted with an issue of statutory interpretation, our goal is to ascertain the true intent and purpose of the statute. *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147. "[T]he best evidence of legislative intent is the plain language of the statute itself." *Id.* (citation and internal quotation marks omitted). Thus, "[w]hen interpreting statutes, we first look to the plain language of the statute and give effect to that language unless it is ambiguous." *State v. Jeffries*, 2009 UT 57, ¶ 7, 217 P.3d 265. And "[w]hen examining the statutory language we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *Id.* (citation and internal quotation marks omitted).

A. Evolution of the Judgment Lien Statute

¶10     The judgment lien statute has been revised numerous times over the past decades, and some of those revisions occurred between the entry of the Judgment in June 2001 and the filing of this lawsuit in 2009. Ultimately, we conclude that the version of the judgment lien statute that was in effect until July 1, 2002 (the 2001 version) is controlling here. *See infra* ¶ 15 n.6. But because it is ultimately relevant to our analysis, we will briefly summarize the legislative evolution of the judgment lien statute since 1992.

¶11     In 1992, Utah Code section 78-22-1 (section 1) provided that the entry of a judgment by a district court automatically created a lien on any real property of the judgment debtor if that property was located in the same county where the judgment was entered. Utah Code Ann. § 78-22-1(2) (Michie Supp. 1992) ("[T]he entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered."). In 1997, section 1 was amended

to apply only to judgments entered before July 1, 1997. *Id.* (Michie Supp. 1997) ("*Prior to July 1, 1997,* . . . the entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered." (emphasis added)).

¶12    Also in 1997, the legislature enacted Utah Code section 78-22-1.5 (section 1.5), which provided in subsection (2) that a judgment entered on or after July 1, 1997, did not create a lien on real property unless it was recorded in the Registry of Judgments, an index meant to facilitate the search for judgments in each county. *Id.* § 78-22-1.5(2) ("On or after July 1, 1997, a judgment rendered or recorded in a district court does not create a lien upon or affect the title to real property unless the judgment is recorded in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located."); *see also id.* § 78-22-1.5(1) (defining "Registry of Judgments" as "the index where a judgment shall be recorded and searchable by the name of the judgment debtor through electronic means or by tangible document"). In 1998, section 1.5 was amended to include subsection (3), which provided that after September 1, 1998, "[i]n addition to the requirement of subsection (2), any judgment that is recorded in the Registry of Judgments . . . shall include a separate information statement of the judgment creditor," providing certain details that would more specifically identify the judgment debtor and the nature of the judgment. *Id.* § 78-22-1.5(3) (Lexis Supp. 1998) ("In addition to the requirement of Subsection (2), any judgment that is recorded in the Registry of Judgments on or after September 1, 1998, shall include a separate information statement of the judgment creditor."); *see also id.* § 78-22-1.5(3)(a)–(e), (4) (describing the particular information that must be included in the information statement and the procedure for filing it).

¶13    Also in 1998, section 1.5 was amended to add subsections that specifically addressed judgments for the "payment of money." In particular, subsection (5)(a) provided a method to bring money

judgments that had been recorded in the Registry of Judgments without a separate information statement into compliance with subsection (3). *Id.* § 78-22-1.5(5)(a) ("Any judgment that requires payment of money and is recorded on or after September 1, 1998, and is not accompanied by the separate information statement as required in Subsections (3) and (4) may be amended by recording in the appropriate Registry of Judgments a document entitled 'Amendment to Recorded Judgment' in the Registry of Judgments in compliance with Subsections (3) and (4)."). Subsection (6) then provided that the priority date of a money judgment so amended was the date of compliance with subsections (3) and (4), i.e., the date that the recorded judgment was amended to include the information statement. *Id.* § 78-22-1.5(6) ("A judgment that requires payment of money recorded on or after September 1, 1998, has as its priority the date of compliance with Subsections (3) and (4)."). Subsection (6) was further amended in 2001 to except from the priority date limitation "parties with actual or constructive knowledge of the judgment." *Id.* § 78-22-1.5(6) (Lexis Supp. 2001).

¶14    These cumulative amendments were in effect until July 1, 2002, and are part of what we have designated as the 2001 version of the judgment lien statute. The statute was significantly revised again, effective July 1, 2002 (the 2002 version).[5] *See id.* §§ 78-22-1, -1.5 (Lexis Supp. 2001 & LexisNexis 2002). The judgment lien statute was amended again and also renumbered in 2008. *See id.* §§ 78B-5-202, -201 (LexisNexis 2008). We will discuss the subsequent changes only as they become relevant to the analysis.

¶15    The 2001 version of the judgment lien statute is controlling here because it was the version in effect at the time of the entry of the Judgment in June 2001 and the transfer of the Property from

---

[5]Notably, the 2002 version required that the judgment and the information statement be recorded in both the Registry of Judgments and in the county recorder's office. Utah Code Ann. § 78-22-1.5(2), (3)(a), (4) (Lexis Supp. 2001 & LexisNexis 2002).

Earl back to Harding in January 2002.[6] Further, section 1.5 of the judgment lien statute is most relevant to our analysis, as it applies to judgments entered after July 1, 1997, whereas section 1 applies only to judgments entered before July 1, 1997. Thus, the relevant portions of the 2001 version of section 1.5 are as follows:

> (2) On or after July 1, 1997, a judgment rendered or recorded in a district court does not create a lien upon or affect the title to real property unless the judgment is recorded in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located.

> (3) In addition to the requirement of Subsection (2), any judgment that is recorded in the Registry of Judgments on or after September 1, 1998, shall include a separate information statement of the judgment creditor . . . .[7]

---

[6]In their briefing to this court, the parties cite and seem to rely to varying degrees on multiple versions of the judgment lien statute, particularly the 2002 version. However, considering the substance of their arguments made to the district court and on appeal, it appears that the parties recognize that the 2001 version is controlling. Perhaps more important, on appeal the parties have made no attempt to make the case for retroactive application of any of the versions of the statute subsequent to the 2001 version. Given that all of the events relevant to the creation of a judgment lien involving the Judgment in the Larson Lawsuit occurred between the effective dates of the 2001 and the 2002 versions of the statute, there appears to be no reasonable basis for applying anything other than the 2001 version.

[7]The remainder of subsection (3) as well as subsection (4) describes the information that must be included in the information statement and the filing process. Utah Code Ann. § 78-22-

(continued...)

. . . .

> (5)(a) Any judgment that requires payment of money and is recorded on or after September 1, 1998, and is not accompanied by the separate information statement as is required in Subsections (3) and (4) may be amended by recording a document entitled "Amendment to Recorded Judgment" in the Registry of Judgments in compliance with Subsections (3) and (4).

. . . .

> (6) A judgment that requires payment of money recorded on or after September 1, 1998, has as its priority the date of compliance with Subsections (3) and (4), except as to parties with actual or constructive knowledge of the judgment.

*Id.* § 78-22-1.5 (Lexis Supp. 2001).

B. Interpretation and Application of the 2001 Version of the Judgment Lien Statute

¶16   Turning now to the issue before us on appeal, the parties disagree about what is required under section 1.5 of the 2001 version of the judgment lien statute to create a judgment lien. The parties agree that to create a judgment lien a judgment must be recorded in the Registry of Judgments. *See* Utah Code Ann. § 78-22-1.5(2) (Lexis Supp. 2001). Although there is some factual dispute as to whether the Judgment was recorded in the Registry of Judgments when it was originally entered in June 2001, the district court apparently assumed that it had been recorded for purposes

---

[7](...continued)
1.5(3)(a)–(e), (4) (Lexis Supp. 2001).

of deciding the parties' cross-motions for summary judgment. We assume so as well and, therefore, do not resolve this disputed issue.

¶17    The parties, however, dispute whether it is mandatory that a separate information statement be recorded with the judgment in order to create a judgment lien. *See id.* § 78-22-1.5(2)–(3). It is undisputed that Persimmon made no attempt to file an information statement until 2009 when it filed a document titled "Information Statement" in the Larson Lawsuit. T3 takes the position that Persimmon's attempt to file an information statement in 2009 was unavailing because Persimmon must have filed an information statement before the Property was conveyed from Earl back to Harding in January 2002, for once the Property left Earl's hands he had no interest in it to which a lien could attach. Thus, according to T3, because Persimmon failed to file an information statement before the Property was transferred to Harding in January 2002, a judgment lien never attached to the Property. Persimmon, on the other hand, asserts that the statute did not require the filing of an information statement to create a judgment lien; rather, it contends that the entry of the Judgment in June 2001 and the presumed contemporaneous recording of the Judgment in the Registry of Judgments was sufficient to create a lien on the Property.

¶18    We agree with T3 and conclude that the 2001 version of section 1.5 of the judgment lien statute requires that a judgment recorded in the Registry of Judgments must be accompanied by an information statement in order to create a judgment lien on real property of the judgment debtor.

¶19    Subsection (2) of section 1.5 provides that a judgment "does not create a lien upon or affect title to real property unless" it "is recorded in the Registry of Judgments." *Id.* § 78-22-1.5. Subsection (3) of section 1.5 then provides, "In addition to the requirement of Subsection (2), any judgment that is recorded in the Registry of Judgments . . . shall include a separate information statement . . . ." *Id.* § 78-22-1.5(3). Use of the word "shall" in subsection (3) indicates that filing an information statement is mandatory. Also, subsection

(2) sets forth a requirement for creating a judgment lien—recording the judgment in the Registry of Judgments; and subsection (3) sets forth a requirement that must be completed "[i]n addition" to the requirement set forth in subsection (2)—inclusion of a separate information statement. *Id.* § 78-22-1.5(2)–(3). Under the statute's plain language, it therefore follows that both requirements must be satisfied to create a judgment lien. *See generally State v. Jeffries*, 2009 UT 57, ¶ 7, 217 P.3d 265 ("When interpreting statutes, we first look to the plain language of the statute and give effect to that language unless it is ambiguous," and "[w]hen examining the statutory language we assume the legislature used each term advisedly and in accordance with its ordinary meaning." (citation and internal quotation marks omitted)).

¶20    Persimmon made an argument in the district court that we elect to address here because it helps explain how the evolution of the judgment lien statute has influenced its structure and aids in our interpretation of the statute. Persimmon contended that the information statement required by subsection (3) is not necessary to create a judgment lien, relying on the fact that the requirement to record the judgment in the Registry of Judgments and the requirement for an information statement are set forth in separate subsections. In particular, Persimmon pointed out that subsection (2) provides that a judgment "does not create a lien upon or affect title to real property unless" it "is recorded in the Registry of Judgments." Utah Code Ann. § 78-22-1.5(2). According to Persimmon, subsection (2) thus describes an exhaustive list of requirements for the creation of a judgment lien. In other words, although subsection (3) provides an additional requirement of recording an information statement with the judgment, because that requirement is not included in subsection (2) it is not essential to the creation of a judgment lien. Persimmon concluded that if an information statement were required to create a judgment lien, that requirement would have been included in subsection (2).

¶21    However, the reason the information statement requirement is set out in a separate subsection is not difficult to ascertain.

Subsection (2) was included in section 1.5 when it was enacted in 1997, and by its terms, applies "[o]n or after July 1, 1997." Utah Code Ann. § 78-22-1.5(2) (Michie Supp. 1997 & Lexis Supp. 2001). Subsection (3), however, was not added to section 1.5 until 1998 and, by its terms, only applies to judgments that are recorded "on or after September 1, 1998." *Id.* § 78-22-1.5(3) (Lexis Supp. 1998 & Supp. 2001). The information statement requirement is separate from subsection (2) because it took effect a year later. Thus, the separate subsections do not mean that the information statement is not essential to the creation of a judgment lien; rather, these requirements are set forth in different subsections due to the different dates of application. So, in order for "a judgment rendered or recorded" "[o]n or after July 1, 1997," to create a judgment lien, it must be recorded in the Registry of Judgments. *Id.* § 78-22-1.5(2) (Michie Supp. 1997 & Lexis Supp. 2001). But, effective a year later, "in addition to" the recording requirement of subsection (2), a judgment must "include a separate information statement of the judgment creditor" in order to create a lien on real property. *Id.* § 78-22-1.5(3) (Lexis Supp. 1998 & Supp. 2001).

¶22   Two other subsections of section 1.5 support this interpretation: subsections (5)(a) and (6), which relate to money judgments. As acknowledged by the parties and the district court, the Judgment entered in the Larson Lawsuit is a "judgment that requires payment of money." *Id.* § 78-22-1.5(5)(a), (6) (Lexis Supp. 2001). Subsection (5)(a) provides that a money judgment "recorded on or after September 1, 1998, [that] is not accompanied by the separate information statement as required in Subsections (3) and (4) may be amended by recording" an "'Amendment to Recorded Judgment'" that complies with the information statement requirement. *Id.* § 78-22-1.5(5)(a). Subsection (6) then provides that the amended judgment will have "as its priority the date of compliance" with the information statement requirement, "except as to parties with actual or constructive knowledge of the judgment." *Id.* § 78-22-1.5(6). By providing a means to amend a noncompliant money judgment to add an information statement after the fact, subsection (5) reinforces the significance of the

information statement requirement. And by limiting the priority date of the recorded judgment to the date of the amendment, subsection (6) supports our reading of the statute that a recorded judgment alone does not suffice to create a lien. *See generally State v. Moreno*, 2009 UT 15, ¶ 10, 203 P.3d 1000 (instructing that "[t]he plain language of a statute" should be read "as a whole" and "its provisions [should be interpreted] in harmony with other provisions in the same statute and with other statutes under the same and related chapters" (first alteration in original) (citation and internal quotation marks omitted)).

¶23    Persimmon argues, however, that the judgment lien statute sets forth different requirements for the creation of a judgment lien on property in the same county where the judgment is rendered than on property located in some other county. Specifically, Persimmon asserts that an information statement is not required to create a judgment lien on real property in the county where the judgment originated; rather, under such circumstances, a judgment lien is created simply by recording the judgment in the Registry of Judgments. According to Persimmon, only if the judgment debtor owns property in a different county must a separate information statement be recorded with the judgment in the Registry of Judgments of that other county to create a judgment lien. Persimmon then concludes that because, here, the Judgment was originally entered in Salt Lake County and the Property is also located in Salt Lake County, the filing of a separate information statement was not required to create a lien; rather, the district court's entry of the Judgment in the Larson Lawsuit and the presumed contemporaneous recording of the Judgment in the Registry of Judgments was sufficient.

¶24    Persimmon's argument rests on a distinction it claims to have identified between the phrases "by a district court" and "in a district court" in section 1.5. According to Persimmon, the phrase "*by* a district court" refers to "the actual entry of a judgment by the [c]ourt with original jurisdiction over the case" while "*in* a district court" refers to a judgment recorded in a court other than the one

that originally entered the judgment. In other words, Persimmon asserts that "the term 'in' [is] used . . . [to] refer[] to the entering of a judgment from one district court into another district court, not the actual entry of the original judgment by the court."

¶25    Contrary to Persimmon's argument, however, the 2001 version of section 1.5, which is controlling here, does not use the phrase "by a district court" at all. Rather, the phrase used consistently throughout is "in a district court." *See* Utah Code Ann. § 78-22-1.5(2) (Lexis Supp. 2001) ("[A] judgment rendered or recorded *in a district court* does not create a lien upon or affect the title to real property . . . ." (emphasis added)). Nor do any of the prior versions of section 1.5 since its enactment in 1997 use the phrase "by a district court." *See id.* § 78-22-1.5 (Michie Supp. 1997 & Lexis Supp. 1998) ("[A] judgment rendered or recorded *in a district court* does not create a lien upon or affect the title to real property . . . ." (emphasis added)). Thus, the distinction argued by Persimmon does not appear anywhere in the relevant portions of section 1.5, either in the 2001 version or in the previous versions.

¶26    Nonetheless, Persimmon attempts to support its interpretation of section 1.5 based on the amendments that became effective in the 2002 version. However, like the 2001 version, the 2002 version also uses the phrase "in a district court" and does not contain the language "by a district court." Specifically, the 2001 version provided that "a judgment *rendered or recorded in a district court* does not create a lien upon or affect the title to real property," *id.* § 78-22-1.5(2) (Lexis Supp. 2001) (emphasis added), while the 2002 version provided that "a judgment *entered in a district court* does not create a lien upon or affect the title to real property," *id.* (Lexis Supp. 2001 & LexisNexis 2002) (emphasis added). Indeed, the only place in the judgment lien statute that has been brought to our attention by the parties where the phrase "by a district court" appears is in section 1, which applies only to judgments entered before July 1, 1997. *Id.* § 78-22-1(2) (Michie Supp. 1997 & Lexis Supp. 2001) ("Prior to July 1, 1997, . . . the entry of judgment *by a district court* is a lien upon the real property of the judgment debtor

. . . ." (emphasis added)). Section 1 is thus inapplicable to the Judgment at issue in this case, which was entered in June 2001.

¶27    Further, regardless of the "by a district court" and "in a district court" language, Persimmon's assertion that the judgment lien statute makes a distinction between the district court that originally enters a judgment and a district court in a different county where a judgment might later be recorded is unworkable under the plain language of the 2001 version of section 1.5. First, section 1.5 refers to "a judgment rendered or recorded in a district court." *Id.* § 78-22-1.5(2) (Lexis Supp. 2001). The language "rendered or recorded" encompasses both judgments that are originally rendered by a district court in one county and judgments that are later recorded in another county. Second, section 1.5 goes on to provide that the judgment must be "recorded in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located." *Id.* This language broadly encompasses all judgments, requiring recording in the same county where property owned by the judgment debtor is located, regardless of the county where the judgment was originally entered or rendered. In addition, subsection (3), which sets forth the information statement requirement, refers to "*any* judgment that is recorded in the Registry of Judgments." *Id.* § 78-22-1.5(3) (emphasis added); *see also id.* § 78-22-1.5(5)(a) (providing that "[*a*]*ny* judgment that requires payment of money" must be amended to comply with subsections (3) and (4) (emphasis added)). Use of the all-inclusive "any" emphasizes that the requirement of subsection (3) applies to all judgments and undermines the notion that section 1.5 recognizes any distinction in the requirements for creation of a judgment lien between the district court where a judgment originates and the district court of some other county where that judgment might later be recorded. Thus, the distinction urged by Persimmon is not supported by the plain language of the judgment lien statute.

¶28    In summary, we conclude that the 2001 version of section 1.5 of the judgment lien statute requires that a judgment be recorded

in the Registry of Judgments with a separate information statement in order to create a judgment lien. Here, the Judgment was entered in June 2001, and we assume for purposes of our analysis that it was contemporaneously recorded in the Registry of Judgments. However, no information statement had been recorded by the time the Property was transferred from Earl back to Harding in January 2002. Indeed, no attempt was made to file an information statement until 2009. As a result, we conclude that because no information statement was recorded during the crucial time period between the rendering of the Judgment and the conveyance back to Harding, no judgment lien was created and none attached to the Property. We therefore affirm the district court's grant of partial summary judgment to T3 and its denial of Persimmon's cross-motion for partial summary judgment.[8]

CONCLUSION

¶29 Because we conclude that the Judgment in the Larson Lawsuit never became a lien on the Property under the statutory requirements in effect during the crucial time period between the entry of the Judgment and Earl's conveyance of the Property back to Harding, we therefore affirm the district court's grant of partial summary judgment to T3 and denial of Persimmon's cross-motion.

---

[8]Earl filed for bankruptcy in 2007, and Persimmon argues in its brief to this court that the bankruptcy discharge of debt did not remove the judgment lien from the Property. This issue was, however, never addressed by the district court in deciding the parties' cross-motions for partial summary judgment. And because we conclude that Persimmon did not have a judgment lien on the Property, there is no reason for us to consider the issue either.