2018 UT App 207

## THE UTAH COURT OF APPEALS

JAMIE EVANS AND EVANS BILLBOARDS LLC,
Appellants,
*v.*
UTAH DEPARTMENT OF TRANSPORTATION,
Appellee.

Opinion
No. 20160994-CA
Filed November 1, 2018

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 130400213

Troy L. Booher, Julie J. Nelson, and Steve K. Gordon,
Attorneys for Appellants

Sean D. Reyes, Stanford E. Purser, Mark E. Burns,
and Renee Spooner, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1     Appellants Jamie Evans and Evans Billboards LLC
(collectively, Evans) appeal the district court's decision
upholding the denial of two outdoor advertising applications by
the Utah Department of Transportation (UDOT). We reverse.

BACKGROUND

¶2     In 2008, Evans submitted applications to construct two
advertising signs near Exit 257 on Interstate 15 (I-15) in Spanish
Fork, Utah. Because the sign locations were within 500 feet of an

interchange, violating the Utah Outdoor Advertising Act, *see* Utah Code Ann. § 72-7-505(3)(c)(i)(A) (LexisNexis Supp. 2017),[1] UDOT denied both applications. Evans nevertheless erected the two signs. The district court ordered Evans to remove them, and Evans appealed that decision to this court. *See Spanish Fork City v. Evans Grader & Paving, Inc.*, 2014 UT App 178, 332 P.3d 980. We affirmed, holding that both signs were "illegal and . . . subject to removal" because they were constructed without a permit. *Id.* ¶ 6.

¶3      Following UDOT's 2008 denial of Evans's applications, UDOT reconfigured Exit 257 as part of its I-15 Core Project. Exit 257 now gives drivers the option of leaving I-15 southbound to connect to either U.S. Highway 6 (US-6) or Spanish Fork Main Street (SR-156). It has three exit lanes: two of those lanes form a bridge to cross over I-15 and connect to US-6 eastbound, and the other lane continues parallel to I-15 until it connects to SR-156.

¶4      In 2012, following this reconfiguration, Evans once again applied for two sign permits for essentially the same locations. UDOT denied those applications because it determined that the proposed signs were still within 500 feet of the interchange at Exit 257. Evans challenged this decision in the district court. Affirming UDOT's denial of the applications, the district court determined that the signs violated the Utah Outdoor Advertising Act because the Act's purpose "is to protect the 500 foot area around an interchange from advertising signs." Evans appeals.

---

1. The Utah Outdoor Advertising Act has since been amended and renumbered. For convenience, we cite the most recent version of the Act, which remains unchanged as to the relevant sections.

ISSUE AND STANDARD OF REVIEW

¶5     Evans's primary contention is that the district court misinterpreted the meaning of an "intersecting highway" under the statutory definition of "pavement widening" in the Utah Outdoor Advertising Act. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Bank of America v. Adamson*, 2017 UT 2, ¶ 7, 391 P.3d 196 (quotation simplified).

ANALYSIS

¶6     The Utah Outdoor Advertising Act (the Act) is "the statutory basis for the regulation of outdoor advertising," balancing concerns of "public safety"[2] and preservation of "the natural scenic beauty of lands bordering on highways," with the goal of ensuring that outdoor advertising remains "a standardized medium of communication throughout the state." Utah Code Ann. § 72-7-501(1) (LexisNexis 2009). The Act fulfills the Utah-Federal Agreement, which conditions the grant of federal highway funds to Utah on "Utah agree[ing] to manage and regulate outdoor advertising along the federal highway system." Utah Admin. Code R933-5-1. *See generally* 23 U.S.C.

---

2. As we gather from oral argument, the principal safety concern is with drivers becoming distracted by billboards when they should be concentrating on driving. This concern is minimal when drivers are simply cruising down a divided highway, but it may become significant when drivers are exiting or entering a highway or navigating intersections and interchanges. The applicable regulations are rather complex and technically challenging, from which it follows that our analysis is as well, but the regulations' overall purpose is not mystification; primarily, it is safety.

§ 131 (2012) (The Highway Beautification Act); Utah Admin. Code R933-5-2 (The Utah-Federal Agreement).

¶7 Under the Act, signs are prohibited within 500 feet of an interchange. Utah Code Ann. § 72-7-505(3)(c)(i)(A) (LexisNexis Supp. 2017). An interchange is an area "where traffic is channeled off or onto an interstate route." *Id.* § 72-7-502(11). The 500-foot prohibition around the interchange is "measured along the interstate highway or freeway from the sign to the nearest point of the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way." *Id.* § 72-7-505(3)(c)(i)(A). The pavement widening is (1) the point of the gore or (2) "where the intersecting lane begins to parallel the other lanes of traffic." *Id.* § 72-7-502(22). *See also Young Elec. Sign Co. v. Utah Dep't of Transp.*, 2005 UT App 169, ¶ 7, 110 P.3d 1118 (stating that "pavement widening" is synonymous with the definition of "point of widening").

¶8 Both sides in this case agree that the pavement widening occurs at the point of the gore, which is the point of the triangular area, defined by two solid white lines, where Exit 257 diverges from I-15.[3] *See* Utah Admin. Code R933-2-2(21) ("'Point

---

3. Evans argues that pavement widening occurs at the point of the gore, and that the exit lanes are deceleration lanes. These two assertions seem at odds with our decision in *Young Electric Sign Co. v. Utah Department of Transportation*, 2005 UT App 169, 110 P.3d 1118, in which we determined that pavement widening occurs at the point of the gore when "there is *no* acceleration lane and the interchange on-ramp immediately dies into the freeway." *Id.* ¶ 9 (emphasis added) (quotation simplified). And "where there exists an acceleration lane," pavement widening occurs "where the intersecting lane begins to parallel the other lanes of traffic." *Id.* (quotation simplified). Because acceleration and deceleration lanes share the same definition under the Utah

(continued…)

of the gore' means the point of the area delineated by two solid white lines that is between a permanently constructed continuing lane of a through-roadway and a permanently constructed lane used to enter or exit the continuing lane, including similar areas between merging or splitting highways."). There is no dispute that Evans's signs are within 500 feet of the point of the gore—393.90 feet and 108.10 feet, respectively.

¶9 But signs are not prohibited within 500 feet of an interchange if the point of the gore is more than 2,640 feet—half a mile—"from the center line of the intersecting highway of the interchange," because by statutory definition there is no pavement widening for the purpose of measuring the 500-foot prohibition. Utah Code Ann. § 72-7-502(22) (LexisNexis Supp. 2017). UDOT concedes that "there was, and is, no intersecting highway" within 2,640 feet of the point of

---

(…continued)

Administrative Code, we see no reason why our interpretation of pavement widening in *Young* should not apply to deceleration lanes as well. Utah Admin. Code R933-2-2(2) (defining acceleration and deceleration lanes as "speed change lanes created for the purpose of enabling a vehicle to increase or decrease its speed to merge into, or out of, traffic on the main-traveled way"). Accordingly, the point of the gore occurs where there is no deceleration lane, only an off-ramp, and where there is a deceleration lane, the pavement widening occurs where the intersecting lane ceases to parallel the other lanes of traffic. *See* Utah Code Ann. § 72-7-502(22) (LexisNexis Supp. 2017). In this case, one of the three exit lanes for Exit 257 is clearly an off-ramp, not a deceleration lane, because it immediately diverges from I-15 without allowing a vehicle to "merge into, or out of, traffic." For that reason, Evans is correct that pavement widening occurs at the point of the gore.

the gore, but insists that allowing Evans's signs would "violate the letter and spirit of [the Act] and the Utah-Federal Agreement."[4] The district court agreed, concluding that, "for the purposes of interpreting the statutes," the point where Exit 257 crosses over I-15 (the Bridge) is an intersecting highway. And because the Bridge is 2,549 feet from the point of the gore, the court concluded that Evans's signs were within 500 feet of an interchange and therefore prohibited.

¶10    On appeal, Evans argues that the Bridge is not an "intersecting highway" and that, because there is no intersecting highway within 2,640 feet of the point of the gore at Exit 257, the signs should be allowed.[5]

---

4. UDOT has repeatedly argued that the 2,640-foot limit is contrary to the Utah-Federal Agreement, and Utah would therefore be in violation of that agreement to allow signs within 500 feet of an interchange. *See Young*, 2005 UT App 169, ¶ 9 n.4. Essentially, the 2,640-foot limit hinders UDOT's enforcement of the 500-foot prohibition of signs around an interchange in some circumstances. Although the Utah-Federal Agreement does not provide a limit on how far a pavement widening may be from the intersecting highway, it is clear from the statute that the Legislature does intend to impose such a limit. Our role is to review and interpret the statutes as the Legislature intended, not to deviate from the statutory language as best meets UDOT's view of its mission.

5. Evans also contends that the exit lanes are deceleration lanes, and that the Act "expressly allows billboards near deceleration lanes by excluding deceleration lanes from the definition of 'interchange.'" Because we reverse on the district court's interpretation of "intersecting highway," we have no occasion to decide whether the exit lanes are deceleration lanes.

I. The Parties' Interpretations

¶11    The Act does not define an "intersecting highway," and the parties offer competing interpretations of this term. UDOT contends that the Bridge is an intersecting highway because Title 72 of the Utah Code (the Transportation Code) defines "highway" as "any public road, street, alley, lane, court, place, viaduct, tunnel, culvert, bridge, or structure laid out or erected for public use," Utah Code Ann. § 72-1-102(7) (LexisNexis 2009), and the Bridge is "both a public bridge and a public road that crosses over Interstate 15." This interpretation would support the district court's conclusion that, although I-15 and US-6 do not intersect, the interchange does intersect with I-15 "for the purposes of interpreting the statutes."

¶12    In contrast, Evans contends that, because an interchange is defined as an area channeling traffic off and onto "another federal, state, county, city, or other route," the Legislature intended "intersecting highway" to mean that "other route." *Id.* § 72-7-502(11) (Supp. 2017). But the Act does not support either of these interpretations.

¶13    When interpreting a statute, "our primary goal is to evince the true intent and purpose of the Legislature." *State v. Davis*, 2011 UT 57, ¶ 21, 266 P.3d 765 (quotation simplified). "The best indicator of legislative intent is the plain language of the statutes themselves," and "[w]e read the plain language of the statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Hertzske v. Snyder*, 2017 UT 4, ¶ 10, 390 P.3d 307 (quotation simplified). "Finally, we avoid any interpretation which renders parts or words in a statute inoperative or superfluous in order to give effect to every word of a statute." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 (quotation simplified).

¶14 UDOT's interpretation fails to give effect to every word of the statute. Because the Bridge is an off-ramp and therefore part of the interchange, *see* Utah Admin. Code R933-2-2(2), UDOT contends that an "intersecting highway" can include the interchange itself. But such an interpretation would render the entire 2,640-foot limit unnecessary because the interchange would always intersect the interstate highway at the exit. The statute clearly states that the distance is to be measured from the pavement widening to "the center line of the intersecting highway *of the* interchange." Utah Code Ann. § 72-7-502(22) (Supp. 2017) (emphasis added). We recognize that the preposition "of" is susceptible to varying interpretations, *see generally Of*, Webster's Third New International Dictionary 1565 (1993), but, to give effect to every word of the statute, the only reasonable interpretation of this statutory provision is that the pavement widening must be within 2,640 feet from the centerline of *the highway intersecting the interchange*—not components of the interchange intersecting each other.

¶15 Furthermore, the language of the Act does not support such an expansive interpretation of "highway" for this purpose. Section 505 uses the phrase, "streets, roads, or highways" several times, demonstrating that "highway" is not considered a street or road. *See* Utah Code Ann. § 72-7-505(3)(d) (LexisNexis 2009). Because "intersecting highway" does not have the same expansive meaning as "highway" in section 102 of the Transportation Code, UDOT's interpretation is incorrect.

¶16 Evans also incorrectly interprets the statute, arguing that by inserting the statutory definitions of "interchange" and "pavement widening" into the 500-foot prohibition statute, the Legislature clearly intended "intersecting highway" to mean "other route." While this view is logical, Evans fails to point to anything in the statute that supports the claim the Legislature intended such a meaning.

## II. Definition of "Intersecting Highway"

¶17 Because the Act provides no specialized meaning for "intersecting highway," we turn to the plain and ordinary meaning of these terms.[6] *See State v. Rasabout*, 2015 UT 72, ¶ 43, 356 P.3d 1258 (Lee, J., concurring). But, in doing so, we interpret "the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465. And we "read and interpret statutory provisions in harmony with other provisions in the same statute and with other related statutes." *State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265.

¶18 "Intersect" is defined as "to meet and cross at a point." *Intersect*, Webster's Third New International Dictionary 1183 (1993). *See also Intersect*, New Oxford American Dictionary 909 (3d ed. 2010) (to "divide (something) by passing or lying across it"); *Intersection*, Black's Law Dictionary 896 (9th ed. 2009) ("A place where two roads meet or form a junction."). "Highway" is defined as "a main road," connecting towns or cities. *Highway*, New Oxford American Dictionary 821 (3d ed. 2010). *See also Highway*, Black's Law Dictionary 798 (9th ed. 2009) ("The main public road connecting towns or cities."); *Highway*, Webster's Third New International Dictionary 1069 (1993) ("[A] main direct road (as between one town or city and another.")). Thus,

---

6. We recognize that, under the Act, the Legislature has defined "intersection," and that the term shares the same definition as "interchange." *See* Utah Code Ann. § 72-7-502(11) (LexisNexis Supp. 2017). But "intersecting" does not share this definition because the 2,640-foot restriction is measured from "the center line of the *intersecting* highway of the interchange or *intersection* at grade," indicating that these two terms hold different meanings. *Id.* § 72-7-502(22) (emphases added).

the plain meaning of an intersecting highway is a main public road that meets or crosses a street, road, or highway. This meaning is consistent with other sections of the Act where "highway" is not a term so expansive as to include every street or road. *See* Utah Code Ann. §§ 72-7-502(1), -505(3)(d) (LexisNexis Supp. 2017).

¶19   Because the Act is "subject to and shall be superseded by conflicting provisions of the Utah-Federal Agreement," *id.* § 72-7-515(2) (2009), we must also interpret the meaning of "intersecting highway" to be in harmony with the agreement and the federal statutory scheme out of which it arises.

¶20   The agreement requires Utah to control outdoor advertising in "areas adjacent to the interstate and primary systems" within the State of Utah. Utah Admin. Code R933-5-2. *See also* 23 U.S.C. § 131(a)–(b) (2012). It also specifies the criteria for outdoor advertising, particularly the sizing, spacing, and lighting of signs. And it requires that "[o]nly roads, streets and highways which *enter directly into the main-traveled way of the primary highway* shall be regarded as intersecting." Utah Admin. Code R933-5-2(III) (emphasis added). Given this provision, and the statutory context of the Act, we conclude that an "intersecting highway" must be a "primary highway."

¶21   In the case before us, the interchange is not "the main-traveled way of the primary highway." *Id*. A main-traveled way "means the through traffic lanes, including auxiliary lanes, acceleration lanes, deceleration lanes, or feeder systems, exclusive of frontage roads and ramps." Utah Code Ann. § 72-7-502(14). *See also* Utah Admin. Code R933-5-2(I)(I) (providing that a main-traveled way is "the traveled way of a highway on which through traffic is carried"). An interchange cannot be a main-traveled way because it does not include "deceleration lanes, acceleration lanes, or feeder systems." Utah Code Ann. § 72-7-502(11). Moreover, the 2,640-foot limit is

measured from the "center line" of the intersecting highway. A "center line" is "a line equidistant from the edges of the median separating the main-traveled way of a divided interstate or other limited-access highway" or "the main-traveled way of a non-divided highway." Utah Admin. Code R933-5-2(I)(G). Center lines occur only on main-traveled ways. Because an interchange is not a main-traveled way, and an intersecting highway clearly has a center line under the statute, the interchange is not a "primary highway." For the Act and the Agreement to be in accord, the interchange must be the road that enters directly into or exits directly from "the main-traveled way of the primary highway," or as the Legislature put it: "the intersecting highway."

¶22    Because an "intersecting highway" must be a "primary highway," and the Act does not define "primary highway," we look to the Utah-Federal Agreement, and the federal statutes out of which it arises, to ascertain its meaning. A "primary highway" is a highway on the federal-aid primary system. *See* 23 U.S.C. § 131(a) (2012); Utah Code Ann. § 72-7-501(2) (LexisNexis 2009); Utah Admin. Code R933-5-2. As of 1991, the federal-aid highway system consisted of four parts: the interstate, primary, secondary, and urban systems. Congress then restructured this system into the National Highway System. *See* 23 U.S.C. § 103(a) (2012) ("[T]he Federal-aid system is the National Highway System."). *See also* Intermodal Surface Transportation Efficiency Act of 1991, Pub. L. No. 102-240, § 1006(a), (b)(2), 105 Stat. 1914, 1923, 1925 (1991). Now, the primary system is "the Federal-aid primary system in existence on June 1, 1991, and any highway which is not on such system but which is on the National Highway System." 23 U.S.C. § 131(t). This change is reflected in the Act because it regulates not only "the interstate" system and "federal aid primary highway [system] existing as of June 1, 1991," as required by the Agreement, but also "the national highway system." Utah Code Ann. § 72-7-501(2)–(3). *See also id.* §§ 72-7-502(26), -505(3)(ii)(A), -510(6)(a) (2009 & Supp. 2017).

¶23    The National Highway System (the NHS) is comprised of "highway routes and connections to transportation facilities that . . . serve major population centers . . . and other major travel destinations," and also "interstate and interregional travel and commerce." 23 U.S.C. § 103(b)(1) (2012). Highways on the NHS, and those previously designated as federal-aid primary highways, are major roads that receive federal funding to ensure they can meet the "[t]ransportation needs of [the] 21st century."[7] 23 U.S.C. § 101(b)(3) (2012). Because the federal-aid primary highway system and the NHS are main public roads, connecting towns and cities, they fit within the ordinary meaning of a highway. *See Highway*, Black's Law Dictionary 798 (9th ed. 2009).

¶24    Here, the district court included I-15 in its interpretation of "intersecting highway." But an interstate highway cannot be an intersecting highway for two reasons. First, the entire 2,640-foot limit would be superfluous because an interchange channels traffic off from and onto an interstate highway, *see supra* ¶ 14, and for that reason, the interstate would always intersect the interchange at the exit and no limit would be necessary. And second, while the interstate system is a part of the NHS, the primary system does not include the interstate system, and the Act and the Utah-Federal Agreement refer to them as two separate systems. *See* 23 U.S.C. § 131(a); Utah Admin. Code R933-5-2. Therefore, an interstate highway is not a primary highway.

¶25    Rather, to be in harmony with the statutory context of the Act, an "intersecting highway" is a primary highway on the

---

7. Whether a highway constitutes a "primary highway" is determined by UDOT with approval by the Secretary of Transportation. 23 U.S.C. § 103(b)(3)(A) (2012). *See also* Utah Code Ann. § 72-1-102(6) (LexisNexis 2009).

federal-aid primary system as of June 1, 1991, or on the NHS. Interpreting this term otherwise would put the Act at odds with legislative intent to adhere to the terms of the Agreement, which states that only streets, roads, and highways that directly intersect the main-traveled way of a primary highway are considered intersecting. *See* Utah Code Ann. § 72-7-515(2) (stating that provisions of the Act "shall be superseded by conflicting provisions of the Utah-Federal Agreement").

¶26    Accordingly, we conclude that an "intersecting highway" under section 505 of the Act is a primary highway that directly intersects the interchange in question.

### III. US-6 and SR-156

¶27    Because US-6 is a federal-aid primary highway and SR-156 is part of the NHS system of highways, they are both primary highways.[8] But neither primary highway intersects the

---

8. *See generally* Utah Dep't of Transp., *Outdoor Advertising Control Map*, http://arcg.is/04OLDW. US-6 is a part of the NHS because it is a non-interstate strategic highway that "provide[s] defense access, continuity, and emergency capabilities for the movement of personnel, materials, and equipment in both peacetime and wartime." 23 U.S.C. § 103(b)(2)(D)(i) (2012). *See* Federal Highway Admin., U.S. Dep't of Transp., *National Highway System*, https://hepgis.fhwa.dot.gov/fhwagis/. And SR-156 is a principal arterial route, a roadway that serves "major centers of metropolitan areas, provide[s] a high degree of mobility, and can also provide mobility through rural areas." Federal Highway Admin., U.S. Dep't of Transp., *Highway Functional Classification Concepts, Criteria and Procedures*, https://www.fhwa.dot.gov/planning/processes/statewide/related/highway_functional_classifications/section03.cfm [https://perma.cc/YYM6-L3NK]. *See also*

(continued…)

interchange within 2,640 feet of the pavement widening at Exit 257.

¶28 UDOT calculated the distances to the intersecting highways by measuring from the point of the gore to the intersections of US-6 and SR-156 with I-15. This calculation is incorrect because a pavement widening is measured from the center line of the primary highway intersecting the interchange—not from where the primary highway intersects the interstate. In any event, neither US-6 nor SR-156 intersect the interchange within 2,640 feet of the point of the gore. US-6 begins at the "Moark Connection Interchange of Route 15 easterly through Spanish Fork Canyon," Utah Code Ann. §-72-4-106(1) (LexisNexis Supp. 2017), which is more than four miles from the interchange at I-15. UDOT also determined that "[a]t no point does [the] legislative definition of [US]-6 include the southbound ramps off of the I-15 mainline in this area." And SR-156 intersects I-15 more than 4,400 feet beyond the point of the gore. Because this intersection is proximate to the intersection of SR-156 and the interchange, it intersects more than 2,640 feet from the pavement widening.

¶29 Because there is no "intersecting highway" within 2,640 feet of the point of the gore at Exit 257 and, consequently, no 500-foot prohibition around the interchange, the district court erred in its conclusion that Evans's signs are prohibited.

CONCLUSION

¶30 We conclude that an "intersecting highway" under the Utah Outdoor Advertising Act is a primary highway that

---

(…continued)
Federal Highway Admin., U.S. Dep't of Transp., *National Highway System*, https://hepgis.fhwa.dot.gov/fhwagis/.

directly intersects the relevant interstate interchange, and that the district court erred in its conclusion that there is an intersecting highway within 2,640 feet of the pavement widening at Exit 257. We therefore reverse its decision to uphold UDOT's denial of Evans's applications and remand with instructions that UDOT grant the applications.

———————